UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRANDON HOLMES,

                            Plaintiff,

          v.

BRIAN FISCHER, Commissioner of the New York
  State Department of Correctional Service,
LUCIEN LECLAIRE, Depty Commnr (DOCS),
UNKNOWN CORRECTIONAL LIEUTENANT,
 (Or Higher-Ranking Authority), Elmira,
FOIL OFFICER (Freedom of Information Officer)
 PALMIERA,
PRISONER UNKNOWN CONFIDENTIAL INFORMANTS,
 ELMIRA PRISON,
NORMAN BEZIO, Special Housing Unit/Disciplinary
 Director,
KAREN BELLAMY, Assistant Commissioner/Director
 of Department of Correctional Services (DOCS),
LUDQUIST, Acting Director of DOCS,
NEW YORK STATE DEPARTMENT OF CORRECTIONAL
 SERVICES (DOCS),
S.J. WENDERLICH, Deputy Superintendent of Security
 for Elmira Prison,
MARK BRADT, Superintendent of Elmira Prison,
SUPERINTENDENT NAPOLI of Southport Prison,
INMATE GRIEVANCE SUPERVISOR ABRUNZO,
SOUTHPORT PRISON NURSE DYAL-WEAVER,
DOCTOR HENRY FOWLER, and
DOCTOR CANFIELD, all sued in their individual and/or
 official capacity,

                         Defendants.

_____

                         **DECISION**
                            **and**
                         **ORDER**
          ----------------------------
                       **REPORT**
                         **and**
         **RECOMMENDATION**

          **09-CV-00829S(F)**

APPEARANCES:        BRANDON HOLMES, *Pro Se*
                           Sing Sing Correctional Facility
                           354 Hunter Street
                           Ossining, New York 10562-5498

ERIC T. SCHNEIDERMAN
Attorney General, State of New York
Attorney for Defendants
KIM S. MURPHY
Assistant New York Attorney General, of Counsel
NYS Attorney General's Office
Main Place Tower
Suite 300A
350 Main Street
Buffalo, NY 14202

## JURISDICTION

This matter was referred to the undersigned for all pre-trial proceedings by

Honorable William M. Skretny, on July 19, 2010. The matter is presently before the

court on Defendant's motion for More Definite Statement, to Strike Complaint, and to

Dismiss. (Doc. No. 3).[1]

## BACKGROUND

Plaintiff, Brandon Holmes ("Holmes" or "Plaintiff"), currently incarcerated at Sing

Sing Correctional Facility ("Sing Sing"), and proceeding *pro se*, commenced this § 1983

action on September 22, 2009, alleging violations of his federal civil rights and pendent

New York common law claims based on events that occurred while Plaintiff was

incarcerated at the Elmira Correctional Facility ("Elmira"), and Southport Correctional

Facility ("Southport"). Plaintiff asserts eight claims for relief, including (1) Eighth

Amendment violations based on conditions of confinement in Elmira's Special Housing

---

[1] Although Defendants' Motion is nondispositive as to the request for a more definite statement, but dispositive as to the requests to strike and to dismiss, the court addresses all arguments in this combined Decision and Order and Report and Recommendation in the interests of judicial economy.

Unit ("SHU"), and Southport's SHU, denial of medical treatment at Elmira and Southport, and being subjected to repeated unlawful urinalysis testing ("First Claim"); (2) violations of the Fourth, Eighth and Fourteenth Amendments in being subjected to non-random urinalysis drug testing based on unfounded suspicion ("Second Claim"); (3) conspiracy to violate Plaintiff's Fourth, Eighth and Fourteenth Amendment rights by ordering Plaintiff to submit to unlawful urinalysis drug testing ("Third Claim"); (4) violations of Plaintiff's First Amendment right to seek redress of grievances ("Fourth Claim"); (5) Defendants harassed and humiliated Plaintiff by subjecting him to unlawful urinalysis drug testing ("Fifth Claim"); (6) conspiracy to harass and humiliate Plaintiff by subjecting him to unlawful urinalysis drug testing ("Sixth Claim"); (7) confinement in SHU to prevent Plaintiff from pursuing due process claims ("Seventh Claim"); and (8) denial of medical care for Plaintiff's heart condition ("Eighth Claim").

The Complaint was subsequently served upon fifteen named defendants, including New York State Department of Correctional Services ("DOCS") and DOCS employees ("Defendants").  Defendants have not answered the Complaint but, on July 2, 2010, filed a motion (Doc. No. 3) ("Defendants' Motion") seeking an order directing (1) Plaintiff serve and file, pursuant to Fed.R.Civ.P. 12(e) ("Rule 12(e)"), a more definite statement, or (2) striking from the Complaint, pursuant to Fed.R.Civ.P. 12(f) ("Rule 12(f)"), redundant, immaterial, and impertinent matter, or (3) dismissing the action, pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), and 8 ("Rule 8"), for failing to comply with the rules of pleadings such that the Complaint fails to state a claim for which relief can be granted, or (4) ordering Plaintiff to serve and file an amended complaint complying with Rules 8, 12(e), 12(f), and Fed.R.Civ.P. 10 ("Rule 10").

Defendants' Motion is supported by Defendants' Memorandum of Law in Support of Motion for a More Definite Statement Pursuant to Rule 12(e), to Strike Pursuant to Rule 12(f), and/or to Dismiss Pursuant to Rule 12(b)(6) (Doc. No. 4) ("Defendants' Memorandum").

On August 30, 2010, Plaintiff filed a Brief in Opposition to Defendant Rule 8 Motion to Dismiss (Doc. No. 10) (Plaintiff's Memorandum").  On September 17, 2010, Defendants filed in further support of Defendants' Motion the Reply Declaration of Assistant New York Attorney General Kim S.  Murphy ("Murphy") (Doc. No. 13) ("Murphy Reply Declaration").  On September 30, 2010, Plaintiff filed a Rebuttal to Defendant Declaration of September 17, 2010 in Further Support of Their Rule 8, 12, 12e, 12f, 12b, etc.  Motion to Dismiss (Doc. No. 14) ("Plaintiff's Sur-Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion is DENIED as to the request for a more definite statement pursuant to Rule 8, should be DENIED as to the requests to strike redundant, immaterial, and impertinent matter from the Complaint pursuant to Rule 12(f), and ordering Plaintiff to file a serve an amended complaint complying with Rules 8, 10, 12(e) and 12(f), and to dismiss the Complaint pursuant to Rule 12(b)(6) for failing to state a claim.


**FACTS**[2]

The Complaint contains a *pro se* form, an additional 127 fact paragraphs, and

---

[2] Taken from the pleadings and motion papers filed in this action.

eight causes of action.  A summary of the 40-page Complaint follows.[3]

Plaintiff alleges he has no documented history of drug use, yet, while incarcerated at Elmira, was subjected to non-random urinalysis on five occasions, including March 10, 2007, June 2007,[4] July 14, 2007, July 27, 2007, and February 2, 2008, based only on unfounded "suspicion" during which a DOCS staff employee ordered Plaintiff to pull down his pants and underwear and urinate into a cup, and then observed Plaintiff's genitals to insure compliance with the urine collection procedure. Complaint ¶¶ 1-2.  According to Plaintiff, each urinalysis procedure yielded negative results.  *Id.* ¶ 3.  Plaintiff maintains that being observed by unidentified Elmira corrections officers while urinating has so upset Plaintiff as to cause Plaintiff to suffer from insomnia, erectile dysfunction, nausea, headaches, loss of energy, burning eyes and dizziness for weeks following each urinalysis.  *Id.* ¶ 8-9.  Plaintiff asserts that each urinalysis procedure was based upon unfounded "suspicion," provided by a unidentified "reliable confidential informant," who told DOCS staff that Plaintiff used drugs, *id.* ¶ 3, although Plaintiff steadfastly denies ever illegally using narcotics. *Id.* ¶ 5.

After being subjected to urinalysis in June 2007, July 2007 and February 2008, Plaintiff attempted to obtain documentation supporting the need for each urinalysis test by submitting Freedom of Information Law ("FOIL") requests to Defendant Elmira Records Access Officer Palmiera ("Palmiera"), who refused to supply the requested information.  Complaint ¶ 4.  In February 2008, Plaintiff filed an inmate grievance ("first

---

[3]The summary presents Plaintiff's claims in the same order in which the appear in the Complaint.

[4] The precise date of the June 2007 urinalysis is not provided in the record.

grievance") and several complaints asserting that the procedures Defendants employed in connection with the urinalysis tests amounted to sexual harassment. *Id.* at ¶ 5. During a hearing on Plaintiff's first grievance, Defendants informed Plaintiff that urinalysis did not amount to sexual harassment, that there was no procedure by which Defendants could assess the reliability of informants prior to ordering a urinalysis, but that Defendants relied on the urinalysis results to confirm the informant's reliability. *Id.* ¶ 6. Defendants also informed Plaintiff that Elmira had no procedure in place to test the reliability of confidential informants before subjecting inmates to urinalysis, but the drug test itself confirmed or denied an informant's reliability. *Id.* Defendants were skeptical of concerns Plaintiff expressed, analogizing the urinalysis procedures to strip searches and frisks, followed by weeks of insomnia and anxiety that a urinalysis may produce a "false positive" result. *Id.* ¶¶ 7-10.

In May 2008, Plaintiff complained to Defendant Elmira Deputy Security Superintendent Wenderlich ("Wenderlich"), that urinalysis requests based on reports received from unknown confidential informants were being "rubber-stamped" by DOCS Lieutenant Zigenfris ("Zigenfris").[5] Complaint ¶¶ 23-26. Wenderlich took no action in response to Plaintiff's complaints about Zigenfris's urinalysis authorizations, asserting Wenderlich considered Zigenfris's approval of the urinalysis requests mere mistakes, and refusing to implement a urinalysis policy to avoid similar mistakes in the future. *Id.* ¶¶ 26-28(d).

When Plaintiff's first grievance was denied, Plaintiff filed an appeal to DOCS

---

[5] Although Plaintiff refers to Zigenfris as a Defendant, Complaint ¶ 23, Zigenfris is not named as a Defendant in either the Complaint's caption, nor in § 3 the Complaint entitled "Parties to this Action."

Central Office Review Committee ("CORC"),[6] and on July 25, 2008, within 72 hours of filing the appeal, Plaintiff was subjected to a random urinalysis, which Plaintiff maintains was to retaliate against Plaintiff for filing the appeal. Complaint ¶ 12-13. Plaintiff filed another inmate grievance ("second grievance") the same day. *Id*. ¶ 14. Defendants, based on information provided by a confidential informant that Plaintiff was using and selling drugs, subjected Plaintiff to another urinalysis on August 27, 2008. *Id*. ¶¶ 15-16. Although Plaintiff's urinalysis was negative, the urinalysis of another inmate, Gilmore, tested at the same time, was positive. *Id*. ¶¶ 19-20. At Gilmore's disciplinary hearing regarding Gilmore's positive urinalysis, it was revealed that the August 27, 2008 urinalysis tests of both Plaintiff and Gilmore were not properly ordered, the requests having been made by an unknown official who forged another DOCS official's signature. *Id*. ¶¶ 20-23. On August 30, 2008, Plaintiff was ordered to submit to another "random" urinalysis, despite having no history of drug abuse. *Id*. ¶ 29.

Plaintiff maintains that without a urinalysis policy, falsification of grounds for urinalysis to harass inmates is common. Complaint ¶¶ 30-31. Both inmates and DOCS employees allegedly engage in providing false information targeting certain inmates for urinalysis. *Id*.

In October 2008, Plaintiff saw Dr. Brasselman about his insomnia and resulting nausea, headaches, burning eyes, aggravation of old gunshot wound, inability to exercise, and appetite loss, all of which Plaintiff attributed to the repeated urinalysis

---

[6] The record does not indicate when Plaintiff's first grievance was denied, or whether Plaintiff's appeal to DOCS CORC was timely. Defendants, who yet to file an answer, do not raise this issue as barring Plaintiff's claims.

testing.  Complaint ¶ 34.  Dr.  Brasselman determined Plaintiff also suffered from hypertension.  *Id*.

In November 2008, Plaintiff received anonymous death threats from confidential informants, but refused Defendants' offer of protective custody.  Complaint ¶ 32.  On November 17, 2008, an unnamed inmate accosted Plaintiff, wielding a metallic instrument with which the inmate cut Plaintiff's head and face.  *Id*. at ¶ 35.  Because Plaintiff defended himself against the attack by kicking, punching and rushing the inmate, Plaintiff was charged with flighting, weapons possession, refusing a direct order and violent conduct as a result of the incident.  *Id*. ¶¶ 35-36.  During a disciplinary hearing on the charges, conducted by Wenderlich between November 26 to December 3, 2008 ("the disciplinary hearing"), Wenderlich refused to consider Plaintiff's self-defense argument, denied Plaintiff's request to view video surveillance of the incident, and refused to construe the incident as related to the repeated anonymous drug use allegations and recent death threats against Plaintiff. *Id*. ¶¶ 36-46.  As a result of the disciplinary hearing, Plaintiff was sentenced to 18 months of confinement in special housing unit ("SHU"), allegedly to retaliate against Plaintiff for complaining about the urinalysis testing.  *Id*. ¶¶ 47-50.  Plaintiff subsequently filed three administrative appeals of the penalty on December 7 and December 9, 2008 and January 1, 2009, *id*. ¶ 53-54, but, on January 20, 2009, Plaintiff's conviction on the prison disciplinary charges was upheld by Defendant SHU/Disciplinary Director Norman Bezio ("Bezio").  *Id*. ¶ 57.

During Plaintiff's confinement to the SHU, he suffered from chest pains, problems breathing and shoulder pain from procedures requiring Plaintiff be handcuffed from behind through a slot in the cell door prior to being moved from his SHU cell.

Complaint ¶¶ 61-70.  The Elmira medical staff allegedly ignored Plaintiff's complaints and refused to order medical examinations.  *Id.*

On December 22, 2008, Plaintiff, then housed in Elmira's SHU, was transferred to Southport where Plaintiff was also confined in SHU for the duration of his 18-month sentence.  Complaint ¶ 64.  While housed in Southport's SHU, Plaintiff underwent an EKG in April or May 2009.[7]  *Id.* ¶ 71.  Plaintiff's cell in Southport's SHU was continually illuminated, 24 hours a day, impeding Plaintiff's sleep, resulting in fatigue, nausea, burning eyes, weakness, and an inability to exercise.  *Id.* ¶ 78.  Plaintiff alleges that multiple inmate grievances and complaint about the 24-hour illumination of his prison cell were ignored.  *Id.* ¶¶ 79-95.  Plaintiff claims Southport officials also failed to provide Plaintiff with appropriate winter clothing, which resulted in hand and foot pain and Plaintiff's inability to continue exercising outdoors.  *Id.* ¶¶ 96-98.  Southport medical staff allegedly also denied Plaintiff medical exams, including a screening to determine the condition of Plaintiff's arteries, and medical relief for hand and foot pain, eczema, hypertension and high cholesterol.  *Id.* ¶¶ 73-76, 102-104, 108-127.  Plaintiff, however, has not been subjected to any urinalysis, random or otherwise, since being transferred to Southport on December 22, 2008.  *Id.* ¶ 107.


### DISCUSSION

Defendants' Motion essentially challenges the Complaint as so vague and ambiguous as to render it impossible to discern the basis for Plaintiff's claims.

---

[7] Neither the precise date nor the results of Plaintiff's EKG are in the record.

Defendants request a court order granting various and alternative forms of relief, including (1) directing Plaintiff to serve and file, pursuant to Rule 12(e), a more definite statement; (2) striking from the Complaint, pursuant to Rule 12(f), redundant, immaterial, impertinent matter which fails to comport with federal pleading requirements; (3) dismissing the action, pursuant to Rules 8 and 12(b)(6), for failing to comply with pleading requirements and, thus, failing to state a claim; and (4) directing Plaintiff to serve and file an amended complaint complying with Rules 8, 10, 12(e) and 12(f). In support of the motion, Defendants characterize the Complaint as "voluminous," "vague and ambiguous," "a rambling narrative with a repetition of various factual allegations and irrelevant detail," "rife with irrelevancy, redundancy, and argumentativeness," with allegations that "are unnecessarily detailed and verbose, and are evidentiary in nature," such that the actual relief sought by the Complaint is unclear. Defendants' Memorandum at 2. Plaintiff opposes Defendants' Motion on the basis that "too much brevity will prevent Plaintiff from stating a claim upon which relief can be granted," which would position the Complaint to be dismissed for failure to state a claim. Plaintiff's Memorandum at 1-2. In further support of the motion, Defendants argue that Plaintiff's Memorandum fails to "clarify the confusing nature of the complaint or remedy any of its defects." Murphy Reply Declaration ¶ 4. In further opposition to the motion, Plaintiff provides definitions for several terms appearing in the Complaint. Plaintiff's Sur-Reply ¶¶ 1-2.

**1.     Motion for a More Definite Statement**

Defendants move pursuant to Rule 12(e) for a more definite statement, asserting

the Complaint contains so many redundant, immaterial, and impertinent allegations as to be vague, rendering it unreasonable to expect Defendants to prepare a response. Defendants' Memorandum at 5. As relevant, Fed. R. Civ. P. 12(e) provides that

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.

Fed. R. Civ. P. 12(e) ("Rule 12(e)").

"Whether to grant a motion for a more definite statement is in the discretion of the court." *Kuklachev v. Gelfman*, 600 F.Supp.2d 437, 456 (E.D.N.Y. 2009) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1377 (2d ed. 1990), and *Vaden v. Lantz*, 459 F.SUpp.2d 149, 150 (D.Conn. 2006)).

"Motions pursuant to Rule 12(e) are disfavored and should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71, 76 (E.D.N.Y. 2002). "The rule is designed to remedy unintelligible pleadings, not to correct for lack of detail." *Kuklachev*, 600 F.Supp.2d at 456. A motion for a more definite statement is only warranted if the complaint does not provide a short and plain statement as required by Fed.R.Civ.P. 8. See *Home & Nature Inc. v. Sherman Specialty Co., Inc.*, 322 F.Supp.2d 260, 265 (E.D.N.Y. 2004). Furthermore, "[m]otions for a more definite statement are generally disfavored because of their dilatory effect. The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 2005 WL 1395576, at *2 (E.D.N.Y. May 11, 2007)

(footnotes and internal quotation marks omitted).

Here, Plaintiff's complaint, although prolix, is not so excessively vague and ambiguous as to render it unintelligible. The factual allegations are, for the most part, grouped with other factual allegations pertaining to the same claims, with a few appearing out of place in the Complaint. Nevertheless, the allegations are sufficient to satisfy the lenient standard of notice pleading. Significantly, Defendants have failed to explain how the Complaint is unintelligible or what prejudice could result in the absence of a more definite statement. *See Patrick Development, Inc. v. VIP Restoration, Inc.*, 2010 WL 447930, at *2 (W.D.N.Y. Feb. 2, 2010) (denying motion for a more definite statement where "defendant has not shown how the complaint is unintelligible or what prejudice – *i.e.*, what loss of rights in later proceedings or at trial – it will suffer if it answers or otherwise challenges the complaint in its current form."). Plaintiff's factual allegations as set forth in this Decision and Order and Report and Recommendation, Facts, *supra*, at 4-9, demonstrate the court's ability to discern Defendants' request for a more definite statement is unfounded.

Insofar as Defendants seek a more definite statement, Defendant's Motion is DENIED.

## 2.    Motion to Strike

Defendants move to have the court strike from the Complaint material that is redundant, immaterial, or impertinent. Defendants' Memorandum at 5. In opposition, Plaintiff asserts that Defendants' bare argument that the Complaint fails to comply with Rule 8's pleading requirements is insufficient to support a Rule 12(f) motion. Plaintiff's

Memorandum at 1-2.

Rule 12(f) provides that

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

Fed. R. Civ. P. 12(f).

Whether to grant such motion, however, is within the district court's discretion. *E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F.Supp.2d 167, 170 (E.D.N.Y. 2004). Rule 12(f) motions to strike are disfavored and not routinely granted, and it is the movant's burden to demonstrate prejudice by the inclusion of the alleged offending material. *S.E.C. v. Lorin*, 869 F.Supp. 1117, 1120 (S.D.N.Y. 1994). A Rule 12(f) motion to strike matter as impertinent or immaterial, "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). To prevail on a Rule 12(f) motion to strike, the movant must show "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F.Supp.2d 495, 510 (S.D.N.Y. 2001).

In the instant case, the Complaint, although lengthy and detailed, is neither vague nor incomprehensible, and pleads claims that cannot be, on their face, termed frivolous. *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988). Indeed, the Complaint has survived the court's review pursuant to 28 U.S.C. § 1915A(a), (b)(1) (court shall review and dismiss frivolous prisoner civil rights claims). Moreover, Defendants have not specified the portions or paragraphs of the Complaint they seek to

strike.  Nor have Defendants demonstrated that any allegation of the Complaint will not be supported by evidence such that the failure to strike a particular allegation will result in prejudice to Defendants.  *Lipsky*, 551 F.3d at 893.  As such, Defendants have also failed to demonstrate any prejudice resulting from the inclusion of the alleged offending, albeit unspecified, material, as is their burden.  *Lorin*, 869 F.Supp. at 1120.

Therefore, Defendant's Motion seeking to strike material pursuant to Rule 12(f) should be DENIED.


### 3.    Motion to Dismiss

Defendants alternatively move pursuant to Rule 12(b)(6) to dismiss the Complaint for failure to state a claim for which relief can be granted based on the asserted pleading deficiencies as discussed, *supra*, at 10-13.  Defendants' Memorandum at 5.  Defendants do not, however, argue that Plaintiff is unable to allege facts to sufficiently state the asserted claims for relief and, moreover, seek dismissal with leave to amend by the filing of a Complaint in compliance with Rules 8, 12(e) and 12(f).  *Id*.  In opposition, Plaintiff asserts that because Defendants have failed to discuss the manner in which any of Plaintiff's claims for relief is deficient, the motion to dismiss for failure to state a claim should be denied.  Plaintiff's Memorandum at 3.

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the

complaint, and draw all reasonable inferences in the plaintiff's favor).  Two recent

Supreme Court cases require application of "a 'plausibility standard,' which is guided by

'[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, __ U.S.

__, 129 S.Ct. 1937, 1949 (2009)).  "First, although 'a court must accept as true all of the

allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,'

and '[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct.

at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the review court to draw on its

judicial experience and common sense.'"  *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949

(quoting *Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be

enough to raise a right to relief above the speculative level on the assumption that all

the allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.

Ordinarily, courts "construe liberally" the pleadings of *pro se* litigants, looking at

them "with a lenient eye, allowing borderline cases to proceed."  *Phillips v. Girdich*, 408

F.3d 124, 127-28 (2d Cir. 2005) (holding that technical pleading irregularities of a *pro se*

litigant should be excused).  Courts should read *pro se* complaints with "special

solicitude" and interpret them to raise the "strongest arguments that they suggest."

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).  Further,

despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint. *Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

In the instant case, the Complaint, liberally construed, pleads sufficient facts to permit each of Plaintiff's eight causes of action to proceed at this time.

### A.     First and Eighth Claims - Prison Conditions and Denial of Medical Care

In his First and Eighth Claims, Plaintiff essentially alleges that, after being denied procedural due process in violation of the 14th Amendment in connection with an allegedly unfounded misbehavior report,[8] Plaintiff, on November 17, 2008, began serving an 18-month term in SHU, where the conditions of his confinement posed such atypical and significant hardship as to constitute cruel and unusual punishment in violation of the Eighth Amendment.  First Claim, Complaint ¶¶ 60-127 and pp. 30-31; Eighth Claim, Complaint at 36-38.  Plaintiff commenced the 18-month SHU sentence on November 17, 2008 in Elmira's SHU and, on December 22, 2008, was transferred to Southport's SHU where Plaintiff was confined for the remaining 17 months of the 18-month SHU confinement, and the conditions also posed an atypical and significant hardship. *Id*.

To establish an Eighth Amendment violation based on prison conditions, a plaintiff must demonstrate "that it is contrary to current standards of decency for anyone to be exposed against his will" to the challenged prison conditions.  *Helling v.*

---

[8] In his Seventh Claim, Plaintiff alleges Defendants, in sentencing Plaintiff to 18 months in SHU, denied Plaintiff due process in violation of the Fourteenth Amendment.

*McKinney*, 509 U.S. 25, 35 (1993).

> An Eighth Amendment claim based on prison conditions must satisfy
>
> both an objective element - - that the prison official's transgression was "sufficiently serious" - - and an objective element - - that the officials acted, or omitted to act, with a "sufficiently culpable state of mind," *i.e.*, with "deliberate indifference to inmate health or safety."

*Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer*, 511 U.S. at 834).

As to the objective element, while the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), prison inmates may not be denied "the minimal civilized measure of life's necessities." *Id*. at 347. The Supreme Court has held that the Eighth Amendment requires that inmates not be deprived of their "basic human needs - - *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling*, 509 U.S. at 32 (internal citation and quotation omitted). "Nor may prison officials expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'" *Phelps*, 308 F.3d at 185 (quoting *Helling*, 509 U.S. at 35). The Eighth Amendment's objective prong requires an inmate "prove that the conditions of his confinement violate contemporary standards of decency." *Id*.

> As to the subjective element, the Supreme Court has held that
>
> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer*, 511 U.S. at 837.

The "deliberate indifference" element is equivalent to criminal law's reckless indifference standard. *Id*. at 839-40.

In the instant case, Plaintiff's Eighth Amendment claim satisfies both the objective and subjective elements necessary to state a claim based on prison conditions.  In particular, Plaintiff claims that while incarcerated in SHU, he was routinely cuffed from behind, aggravating left shoulder and leg conditions resulting from previous injuries, was denied proper medical treatment and tests for complaints of chest pain, hypertension, high cholesterol, and eczema, his SHU cell was continuously illuminated, rendering it impossible to sleep, resulting in fatigue, nausea, burning eyes and weakness, interference with an inmate grievance Plaintiff attempted to file regarding the constant SHU cell illumination, denied dental floss, denied, during the winter months, proper boots, gloves, hat, and a thermos causing Plaintiff to catch cold, exposed to feces thrown by mentally-ill inmates confined to SHU, and subjected to unrinalysis testing which so traumatized him as to cause Plaintiff physical harm. Depending on what is revealed during discovery, Plaintiff has alleged prison conditions under which Plaintiff was denied "basic human needs," including clothing and medical care, which could pose a serious threat to Plaintiff's health.  *Helling*, 509 U.S. at 32; *Phelps*, 308 F.3d at 185.  Moreover, it is significant that Plaintiff claims the unsatisfactory prison conditions persisted throughout his 18-month SHU confinement. *See Hutto v. Finney*, 437 U.S. 678, 687 (1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' [*sic*] might be tolerable for a few days and intolerably cruel for weeks and months.").  Accordingly, the court finds Plaintiff has plausibly alleged First and Eighth Amendment claims based on his alleged confinement conditions and Defendants' alleged retaliation.

As such, Defendant's motion to dismiss should be DENIED as to Plaintiff's First and Eighth Claims challenging the conditions of his confinement in SHU, retaliation, and denial of necessary medical care.

## B.     First, Second, Third, Fifth and Sixth Claims - Urinalysis Testing

Plaintiff asserts in his First, Second, Third, Fifth and Sixth Claims that the urinalysis testing to which he was subjected while incarcerated at Elmira violated his Fourth and Eighth Amendments.[9]  First Claim, Complaint ¶¶ 2-34, and at 30-31; Second Claim, Complaint at 31-32; Third Claim, Complaint at 32; Fifth Claim, Complaint at 35; Sixth Claim, Complaint at 35.

A non-consensual urinalysis test of a prisoner constitutes a Fourth Amendment search.  *Storms v. Coughlin*, 600 F.Supp. 1214 (S.D.N.Y. 1984).  Nevertheless, the Supreme Court has made clear that "in the context of safety and administrative regulations, a search unsupportable by probable cause may be reasonable when special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement impracticable."  *Bd. of Edu. v. Earls*, 536 U.S. 822, 289 (2002).  "[I]n certain limited circumstances, the Government's need to discover... latent or hidden conditions, or to prevent their development, is sufficiently compelling to justify the intrusion on privacy entailed by conducting such searches without any measure of individualized suspicion."  *Id*.  One legitimate government interest for such measures is maintaining order and discipline within a prison. *Pell v. Procunier*, 417 U.S. 817, 823

---

[9] Plaintiff's further assertion in his Sixth Claim, that Defendants conspired with unknown confidential informants to violate Plaintiff's constitutional rights by subjecting Plaintiff to urinalysis testing is addressed, *infra*, at 24-26.

(1974).  Therefore, prison administrators must be accorded "wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (upholding body cavity searches following contact visits and random cell searches within prisons).  Indeed, the constitutional rights which would otherwise be accorded to prisoners give way when in conflict with the security needs of a prison.  *Id*.  As such, the Fourth Amendment does not prevent state prison officials from subjecting prisoners to daily urinalysis at random, provided that such testing is done in a reasonable manner.  *Storms*, 600 F.Supp. at 1221.

Plaintiff, however, complains that he was subjected to urinalysis based on reports from confidential informants whose credibility and reliability had not been confirmed, despite a complete absence of any history of drug use, and that the two random urinalysis tests to which Plaintiff was subjected were done to retaliate against Plaintiff for filing inmate grievances regarding the non-random urinalysis testing.

Regardless of whether Plaintiff was subjected to random urinalysis testing, or was chosen to undergo such testing based on information provided by a confidential informant whose reliability was not then known, at least one court has recognized that "[b]ecause these tests involve both embarrassment and potential punishment there is . . . the possibility of their abuse for purposes of harassment.  In particular, prisoners may be targeted for testing simply to harass them."  *Storms*, 600 F.Supp. at 1223.  Similarly, in the instant case, insofar as Plaintiff maintains that there was no indication of the reliability of the confidential informant who allegedly supplied the information on which Defendants' rely as establishing "reasonable suspicion" in support of the non-random

urinalysis testing, it is plausible Defendants targeted Plaintiff for such testing to harass him, particularly following his complaint against such testing, in violation of the Fourth Amendment.[10]

With regard to the Eighth Amendment, Plaintiff alleges he was so traumatized by being repeatedly subjected to urinalysis that in October 2008, he sought treatment from Dr. Brasselman for physical conditions, including insomnia, nausea, headaches, burning eyes, aggravation of an old gunshot wound, inability to exercise, and appetite loss, all of which Plaintiff attributes to the repeated urinalysis testing. Complaint ¶ 34. Dr. Brasselman determined Plaintiff also suffered from hypertension. *Id.* The nature of such conditions do not render it implausible that Defendants' conduct, by repeatedly subjecting Plaintiff to urinalysis testing, posed a substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment.

Furthermore, insofar as Plaintiff may have been subjected to non-random or random urinalysis to retaliate against Plaintiff for filing inmate grievances against Defendants based on such tests, it is plausible that Defendants have violated Plaintiff's First Amendment right to seek redress of grievances. "Courts properly approach prison retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting

---

[10] The court expresses no opinion on whether Defendants are qualifiedly immune from any liability based on the non-random urinalysis tests to which Plaintiff was subjected. *See Strauch v. Demskie*, 892 F.Supp. 503, 506 n. 6 (S.D.N.Y. 1995) (noting that as of 1995, whether non-random urinalysis testing of inmates violated the Fourth Amendment was undecided).

*Dawes v. Walker*, 239 F.3d 489, 491 (2d cir. 2001), *overruled on other grounds by*

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To survive a motion to dismiss for

failure to state a claim based on retaliation,

> a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."

*Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).

In the instant case, Plaintiff has alleged all three requisite elements.

First, it is established the filing of an inmate grievance is a constitutionally

protected activity. *Davis*, 320 F.3d at 353. Second, Plaintiff alleges that upon filing

inmate grievances, he was subjected to additional traumatizing urinalysis testing.

Complaint ¶¶ 12-13, 15-16, 29. Finally, Plaintiff alleges that the filing of inmate

grievances caused Defendants to target Plaintiff for further urinalysis. *Id.* Accordingly,

Plaintiff has stated a claim for retaliation in violation of the First Amendment.

As such, Plaintiff's First, Second, Third, Fifth and Sixth Claims should not be

dismissed under Rule 12(b)(6) for failure to state a claim for which relief can be

granted.


**C.     Fourth Claim - First Amendment Right to Petition**

Plaintiff alleges Defendants violated his First Amendment right to petition for

redress of grievances by denying Plaintiff access to records documenting the reason

Plaintiff was chosen to undergo urinalysis, thereby rendering Plaintiff unable to lodge

complaints against DOCS officials who approved the urinalysis requests. Plaintiff's

Fourth Claim, Complaint at 33-34. Plaintiff has sufficiently alleged a violation of his First Amendment right to petition for redress of grievances.

The Second Circuit has held that inmates "must be permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers." *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (bracketed material and italics in original) (internal quotation marks and citation omitted). "Like the right of access to courts, the right to petition is substantive rather than procedural and therefore 'cannot be obstructed, regardless of the procedural means applied.'" *Franco*, 854 F.2d at 590 (quoting *Morello v. James*, 810 F.2d 344 (2d Cir. 1987)). Rather, "intentional obstruction of a prisoner's right to seek redress of grievances 'is precisely the sort of oppression that . . . section 1983 [is] intended to remedy.'" *Id*.

In the instant case, Plaintiff should not be any less entitled to relief under § 1983 because he was attempting to address his complaints to DOCS, rather than to a court of law. *Franco*, 854 F.3d at 589-90 (plaintiff "should not be any less entitled to relief under section 1983 because he was addressing his complaints to a state administrative agency rather than to a court of law."). Insofar as Defendant's refusal to provide Plaintiff with the information necessary to pursue such claim through DOCS inmate grievance procedures, Plaintiff has stated a plausible First Amendment access to court claim.

Defendants' motion to dismiss Plaintiff's Fourth Claim should be DENIED.

**D.     Sixth Claim - Conspiracy to Violate Civil Rights**

Plaintiff alleges that Defendants conspired with confidential informants to violate

Plaintiff's constitutional rights by repeatedly targeting Plaintiff for unfounded urinalysis

testing to humiliate and sexually harass Plaintiff, and subjecting Plaintiff to death

threats.  Plaintiff's Sixth Claim, Complaint at 35.  Plaintiff further claims that Defendant

Wenderlich conspired with confidential informants by refusing, at Plaintiff's disciplinary

hearing, to permit Plaintiff to develop his defense by denying Plaintiff's request to view

video surveillance of the incident and refusing to construe the incident as related to the

repeated anonymous drug use allegations and recent death threats against Plaintiff.  *Id*.

Plaintiff has sufficiently stated a claim for conspiracy to violate his civil rights.

It is unlawful to conspire to interfere with one's civil rights.  42 U.S.C. § 1985 ("§

1985").  Although Plaintiff does not specify the subsection under which he asserts his

§ 1985 claim, a fair reading of § 1985 establishes Plaintiff's Sixth Claim is based on §

1985(3) which proscribes a conspiracy to deprive a person of any rights or privileges

under the laws.[11]  The four elements of a § 1985(3) claim include

(a) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any

---

[11] Section 1985(1) renders it unlawful to conspire to prevent an officer from performing duties, whereas § 1985(2) renders it unlawful to conspire to obstruct justice, or to intimidate a party, juror or witness.  Further, as relevant, § 1985(3) provides

If two or more persons in any State or Territory conspire . . . for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having an exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993) (citing and quoting *United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).

A conspiracy under § 1985 "need not be shown by an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (quoting *United States v. Rubin*, 844 F.2d 878, 984 (2d Cir. 1988)). Nevertheless, complaints containing only conclusory, vague or general allegations that the defendants have conspired to deprive a plaintiff of his civil rights are insufficient. *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (citing *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1981)). In the instant case, Plaintiff has sufficiently alleged all four elements necessary to state a plausible claim based on conspiracy to violate his civil rights.

In particular, Plaintiff alleges Defendants, acting only on reports by unidentified confidential informants, repeatedly subjected Plaintiff to unfounded urinalysis testing despite no history of drug use and the fact that each urinalysis was negative. According to Plaintiff, Defendants refused to disclose the identity of the asserted confidential informants upon whose statements Defendants assert they relied in choosing Plaintiff for urinalysis, and that Wenderlich conspired with other Defendants and the confidential informants by refusing to provide Plaintiff with access to information and evidence necessary to present a defense at Plaintiff's disciplinary hearing. Plaintiff further

maintains he was traumatized by each urinalysis both because he considered the urinalysis procedure so humiliating as to amount to sexual harassment, and fear that a false positive result would subject Plaintiff to disciplinary action as well as further urinalysis. Finally, Plaintiff maintains the trauma of the urinalysis caused him insomnia, headaches, nausea, hypertension, and other physical ailments for which he sought medical treatment.

As such, Plaintiff's Sixth Claim should not be dismissed for failing to state a claim.


### E.    Seventh Claim - Denial of Due Process

Plaintiff claims Defendant Wenderlich, by denying Plaintiff the information necessary to present his self-defense argument in response to the inmate disciplinary charges lodged against Plaintiff following the November 18, 2008 incident in which Plaintiff maintains he was attacked by another inmate wielding a metal instrument with which Plaintiff was cut, deprived Plaintiff with due process in connection with Plaintiff's disciplinary hearing and resulting 18-month SHU confinement. Plaintiff's Seventh Claim, Complaint at 36. Plaintiff maintains he was further denied due process when Defendant SHU/Disciplinary Director Bezio upheld Plaintiff's disciplinary conviction and sentence. *Id*.

The filing of a false misbehavior report does not constitute "a *per se* constitutional violation actionable under § 1983" provided the inmate is afforded due process protection through a disciplinary hearing on the misbehavior report. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("prison inmate has no constitutionally

guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988). "The key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections [to dispute a false or incorrect charge] guaranteed by the Fourteenth Amendment." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (bracketed material added). Where the basis for attacking a prison disciplinary disposition is insufficiency of the evidence, due process requires only that "some evidence" in the record support the disciplinary hearing officer's decision, *i.e.*, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Walpole v. Hill*, 472 U.S. 445, 455-56 (1985) (citing *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103,106 (1927)). Dismissal of a denial of due process claim is, however, improper where an inmate alleges he was unfairly denied the right to rebut the charges by presenting evidence or calling witnesses in defense of the charges against him. *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995).

Here, although Plaintiff admits that a disciplinary hearing regarding the fight was held on between November 6 and December 3, 2008, Plaintiff maintains that Wenderlich, by refusing to provide Plaintiff with access to the information necessary to prepare Plaintiff's self-defense argument, and Bezio, by affirming Plaintiff's disciplinary conviction despite due process deficiencies, unfairly denied Plaintiff the right to rebut the charges against him. *See Chavis v. Zodlow*, 128 Fed.Appx. 800, 804-05 (2d Cir. 2005) (vacating district court's grant of judgment on the pleadings in favor of DOCS

defendants on inmate plaintiff's denial of due process claim pertaining to prison disciplinary hearing).

Defendants' motion to dismiss the Seventh Claim should be DENIED.


**CONCLUSION**

Based on the foregoing, Defendant's Motion (Doc. No. 3) is DENIED as to the request for a more definite statement, should be DENIED as to the request to strike, and should be DENIED as to Defendants' request to dismiss for failure to state a claim.

SO ORDERED, as to Defendants' request
for a more definite statement.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Respectfully Submitted, as to Defendants'
requests to strike and to dismiss,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Dated:        January 4, 2011
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 4, 2011
            Buffalo, New York