UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRANDON HOLMES,

                Plaintiff,

     v.

BRIAN FISCHER, Commissioner of the New York
  State Department of Correctional Services, *et al.*,

                Defendants.

**DECISION
and
ORDER**

**09-CV-00829S(F)**

---

APPEARANCES:         BRANDON HOLMES, *Pro Se*
                               89-B-1812
                               Sing Sing Correctional Facility
                               354 Hunter Street
                               Ossining, New York 10562-5498

                               ERIC T. SCHNEIDERMAN
                               Attorney General, State of New York
                               Attorney for Defendants
                               DAVID J. SLEIGHT
                               Assistant New York Attorney General, of Counsel
                               New York State Attorney General's Office
                               Main Place Tower
                               Suite 300A
                               350 Main Street
                               Buffalo, NY 14202

## JURISDICTION

This case was referred to the undersigned on July 19, 2010, by Honorable William M. Skretny, for all pretrial proceedings. The matter is presently before the court on Plaintiff's motions to strike the answer (Doc. No. 37), filed March 8, 2012, to compel discovery (Doc. No. 38), filed April 4, 2012, and for sanctions (Doc. No. 42), filed August 6, 2012.

**BACKGROUND and FACTS**[1]

Plaintiff Brandon Holmes ("Plaintiff" or "Holmes"), currently incarcerated at Sing Sing Correctional Facility ("Sing Sing"), and proceeding *pro se*, commenced this § 1983 action on September 22, 2009, alleging violations of his federal civil rights and pendent New York common law claims based on events that occurred while Plaintiff was incarcerated at the Elmira Correctional Facility ("Elmira"), and Southport Correctional Facility ("Southport"). With regard to his claims challenging his repeated subjection to urinalysis as in violation of the Fourth Amendment, Plaintiff specifically alleges that despite having no history of drug use, Plaintiff was repeatedly subjected to urinalysis which were not random but "based upon 'suspicion'" Defendants attribute to "a 'reliable confidential informant'" who had advised DOCCS staff at the correctional facility that Plaintiff was using drugs. Amended Complaint, Facts ¶¶ 1-3. Plaintiff further alleges Defendants ordered him to submit to urinalysis on March 10, 2007, June 2007,[2] July 14, 2007, July 27, 2007, February 2, 2008, August 27, 2008, and November 18, 2008. *Id.* ¶¶ 2, 15-16. In response to a request for production of documents ("Discovery Requests")[3] served by Plaintiff, Defendants filed on July 5, 2011, responses to Plaintiff's Request for Production of Documents (Doc. No. 21) ("Response to Discovery"). On November 21, 2011, Defendants filed supplemental responses to the Discovery Requests ("Supplemental Response to Discovery").

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] Plaintiff does not specify the precise date in June 2007 on which he underwent urinalysis.

[3] Although required by Rule 5.2(f) of the Local Rules of Civil Procedure - W.D.N.Y., Plaintiff did not file a copy of his Discovery Requests. Nor is it clear from the record when Defendants were served with the Discovery Requests.

On January 30, 2012, Plaintiff, pursuant to the court's December 13, 2011 Decision and Order (Doc. No. 31), granting Plaintiff permission to amend his complaint, filed an amended complaint (Doc. No. 34) ("Amended Complaint"). Defendants to this action are all current or former employees of New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff asserts eight claims for relief challenging the conditions of his confinement, an alleged denial of medical treatment, repeatedly being subjected to non-random urinalysis testing, and alleged retaliation for exercising his civil rights. Defendants' answer to the Amended Complaint was filed February 9, 2012 (Doc. No. 36) ("Answer").

On March 8, 2012, Plaintiff filed a motion to strike the Answer as untimely filed and insufficient as a matter of law, (Doc. No. 37) ("Motion to Strike"), supported by the attached Affidavit in Support of Motion to Strike Answer ("Affidavit Supporting Motion to Strike"). On April 4, 2012, Plaintiff filed a motion to compel discovery and for sanctions (Doc. No. 38) ("Motion to Compel"), supported by the attached Affidavit in Support of Motion to Compel Discovery and for Sanctions ("Affidavit Supporting Motion to Compel), with exhibits, and the separately filed Brief in Support of Motion to Compel Discovery and for Discovery Sanctions (Doc. No. 39) ("Plaintiff's Memorandum"). On August 6, 2012, Plaintiff filed a motion for sanctions pursuant to Fed.R.Civ.P. 11 ("Rule 11"), and the All Writs Act, and for a subpoena duces tecum (Doc. No. 42) ("Motion for Sanctions"), supported by the attached Affidavit in Support of Motion for Sanctions ("Affidavit Supporting Motion for Sanctions"), with exhibits. On August 30, 2012, Plaintiff filed an addendum to his Motions to Strike, to Compel, and for Sanctions ("Plaintiff's Motions") (Doc. No. 48) ("Plaintiff's Addendum"). In opposition to Plaintiff's

Motions, Defendants filed on September 14, 2012, the Declaration of Assistant Attorney General David J. Sleight ("Sleight") (Doc. No. 49) ("Sleight Declaration"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motions to Strike and for Sanctions are DENIED; Plaintiff's Motion to Compel is GRANTED.

## DISCUSSION

**1.      Motion to Strike**

Plaintiff seeks to strike Defendants' Answer to the Amended Complaint as untimely filed, Affidavit Supporting Motion to Strike ¶¶ 4-8, and because Defendants' affirmative defenses are insufficient as a matter of law. *Id.* ¶¶ 9-25. Defendants argue in opposition that Plaintiff, insofar as he seeks to strike the Answer as untimely, has confused the time in which Defendants were to file an answer to the original Complaint with the time Defendants had to file an answer to the Amended Complaint. Sleight Declaration ¶¶ 13-14. Defendants further maintain Plaintiff has failed to sustain his burden of establishing any of Defendants' affirmative defenses are insufficient as a matter of law. *Id.* ¶ 15.

With regard to Plaintiff's request to strike the Answer as untimely filed, Plaintiff asserts that although a motion to dismiss filed by Defendants in opposition to the original complaint was denied on February 1, 2011 (Doc. No. 16), Defendants did not file, within 14 days of such denial, an answer to the original Complaint. Affidavit Supporting Motion to Strike ¶¶ 4-8. The filing of Defendants' Answer to the Amended Complaint on February 9, 2012, however, was within the 21 days provided pursuant to

4

Fed.R.Civ.P. 12(a)(1)(A) to serve an answer after being served with the summons and complaint. Plaintiff, in support of his Motion to Strike, relies on the time Defendants had to file a responsive pleading to the original complaint after Defendants' motion to dismiss had been denied on February 1, 2011, which was 14 days under Fed.R.Civ.P. 12(a)(4)(A) (requiring service of a responsive pleading within 14 days of the court's denial of a motion to dismiss).  Plaintiff, however, ignores the fact that with the filing of his Amended Complaint on January 30, 2012, Defendants had a new 21-day period within which to file a responsive pleading, *i.e.*, Defendants' answer.  If, as Defendants suggest, Plaintiff believes that by failing to file any answer to the original complaint, Defendants have waived the right to file any responsive pleading in this action, including an answer to an amended pleading, Plaintiff references no case or statute in support of such novel theory, and the court's research reveals none.

Nor is there any merit to Plaintiff's assertion that the affirmative defenses must be dismissed as legally insufficient.  Although not specified by Plaintiff, his motion to strike the affirmative defenses as insufficient as a matter of law is made pursuant to Fed.R.Civ.P. 12(f) ("Rule 12(f)") which provides that, either *sua sponte* or upon motion, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Because affirmative defenses are subject to the general rules of pleading, a defense to a claim is required to be stated only "in short and plain terms." Fed.R.Civ.P. 8(b)(1)(A).  "An affirmative defense is legally 'insufficient' if, as a matter of law, it cannot succeed under any circumstances." *D.S. Am. (East), Inc. v. Chromagrafx Imaging Sys.*, 873 F.Supp. 786, 797 (E.D.N.Y. 1995).  A motion to strike an affirmative defense must be decided on the basis of the

pleadings alone.  *National Union Fire Ins. Co. v. Alexander*, 728 F.Supp. 192, 203 (S.D.N.Y. 1989).  "An affirmative defense is insufficient and may be dismissed if 'as a matter of law, the defense cannot succeed under any circumstances.'" *Petitt v. Celebrity Cruises, Inc.*, 1999 WL 436423, at * 1 (S.D.N.Y. June 24, 1999) (quoting *Alexander*, 728 F.Supp. at 203).  Further, "[m]otions to strike are not generally favored and require a showing that the 'insufficiency of the defense is clearly apparent.'" *Id.* (quoting *Ali v. New York City Transit Authority*, 176 F.R.D. 68, 70 (E.D.N.Y. 1997)).

Some of the arguments Plaintiff makes in support of dismissing the affirmative defenses under Rule 12(f) are based on matters outside the pleadings.  For example, Plaintiff maintains Defendants cannot qualify for immunity because the right of prisoners to be free from unreasonable searches is well-established.  Affidavit Supporting Motion to Strike ¶ 14.  Whether the urinalysis testing to which Plaintiff was subjected qualifies as an unreasonable search, however, is an essential question at issue in this case.  As such, such defense cannot be stricken as insufficient as a matter of law.

Other arguments Plaintiff advances pertain only to the original complaint, such as Plaintiff's assertion that because this court has already denied Defendants' motion to dismiss on February 1, 2011, Defendants' affirmative defense that the Amended Complaint fails to state a claim is legally insufficient.  Affidavit Supporting Motion to Strike ¶ 13.  Simply, that a motion made by Defendants to dismiss the original complaint for failing to state a claim was denied does not necessarily mean that Defendants' affirmative defense that the Amended Complaint fails to state a claim is also without merit.  Accordingly, orders made with regard to the original complaint are

not relevant to the legal sufficiency of the affirmative answers asserted with regard to the Amended Complaint.

Plaintiff's Motion to Strike is therefore DENIED.

**2.      Motion to Compel**

Plaintiff moves to compel discovery based on Defendants' alleged failure to produce various documents responsive to Plaintiff's discovery demands seeking documents related to all the non-random urinalysis testing to which Plaintiff was subjected between July 2006 and July 2008, as well as confidential information regarding the other inmates Plaintiff asserts gave false information spurring Defendants' decision to subject Plaintiff to urinalysis, and information Plaintiff asserts is in the possession of New York's Inspector General's Office regarding death threats allegedly made against Plaintiff.  Defendants oppose the motion on the basis that they have already produced 431 pages of documents responsive to Plaintiff's discovery demands, but that Defendants had on file only one urinalysis request form from the specified time period, the rest having been destroyed in the ordinary course of business.  Sleight Declaration ¶ 17, and that even if any confidential informants provided statements giving rise to the suspicion for any urinalysis test, the identity of such informants is privileged information which need not be disclosed, *id.* ¶ 21, and any evidence pertaining to death threats against Plaintiff would be in the custody or control of New York's Inspector General's Office over which Defendants have no control, *id.* ¶ 22.  See Fed.R.Civ.P. 34(a)(1) (documents subject to production must be within party's "possession, custody, or control").

Defendants's Responses to Discovery Requests establish that while incarcerated at Elmira Correctional Facility, Plaintiff underwent urinalysis based on suspicion on March 10, 2007, July 14, 2007, July 27, 2007, February 2, 2008, and November 28, 2008. Responses to Discovery Requests at 14, Bates No. 000001. Defendants' records also show Plaintiff was randomly selected for urinalysis performed on July 29, 2008, and August 28, 2008. *Id.* Additionally, on August 30, 2008, Plaintiff submitted to urinalysis, the reason for which is designated as "other." *Id.* Plaintiff's specific Discovery Requests at issue include documents pertaining to the urinalysis tests to which Plaintiff was subjected at Elmira Correctional Facility between July 2006 and July 2008, and the identity of the confidential informants who provided the information giving rise to the suspicion on which several urinalysis tests were based. Defendants assert they have produced all existing documents relevant to the urinalysis tests, including a print-out of a computer screen reflecting the twelve occasions on which Plaintiff was subjected to urinalysis for the period May 2000 through November 2008, a copy of the Elmira Correctional Facility's logbook for the period July 2006 through July 2008, redacted as to names of other inmates who also underwent urinalysis, and a copy of the only "Request for Urinalysis Test" form still within Defendants' possession or control, which pertains to the November 28, 2008 urinalysis, Doc. No. 21 at 15, Bates No. 000002, ordered following Plaintiff's involvement in an altercation with another inmate, based on suspicion that the altercation may have been "due to drug involvement." Sleight Declaration ¶ 17. According to Defendants, because urinalysis request forms are destroyed in the ordinary course of business, no other urinalysis request forms responsive to Plaintiff's Discovery Requests existed when Defendants

were served with such requests. *Id.*

"'Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's uses as evidence in pending or reasonably foreseeable litigation.'" *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to litigation." *Fujitsu Ltd. V. Federal Exp. Corp.*, 247 F.3d 423. 436 (2d Cir. 2001).

With regard to Plaintiff's motion to compel Request for Urinalysis Test forms, Defendants' failure to preserve relevant evidence after this action was commenced, and failure to provide the identity of informants who provided statements on which the "suspicious" urinalysis tests were based supports an award of sanctions. "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) (citing *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 135-36 (2d Cir. 1988)). The appropriate sanction on the instant facts is an adverse inference instruction at trial, which will be awarded where the party seeking discovery establishes

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp.*, 306 F.3d at 107 (citing and quoting *Byrnie v. Town of*

*Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)).

Here, it is undisputed that several of the Request for Urinalysis Test forms were "destroyed in the ordinary course of business," as Defendants maintain was their practice, Sleight Declaration ¶ 17, after the action, challenging the circumstances under which Plaintiff was subjected to urinalysis tests based upon suspicion, was commenced. As such, Defendants should have been aware of the relevancy of such forms to the action given that several of the urinalysis tests to which Plaintiff was subjected occurred within three years of the commencement of this action, *viz.*, September 22, 2009, and taken steps to preserve the documentation rather than permitting its destruction.

Although whether the destroyed documentation would be helpful to Plaintiff is not known, Defendants have not submitted an affidavit from any DOCCS official, made upon personal knowledge, establishing whether the contents of such destroyed documentation was likely to have been helpful to Plaintiff.  The Second Circuit has specifically advised that district courts "must take care not to 'hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" *Residential Funding Corp.*, 306 F.3d at 109 (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998), and citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 110 (2d Cir. 2001)).  Further, that Defendants were grossly negligent in failing to preserve the relevant Request for Urinalysis Test forms sufficiently establishes the requisite culpable state of mind. *i.e.*, bad faith, necessary to support an

adverse inference instruction. *Residential Funding Corp.*, 306 F.3d at 109. Accordingly, Plaintiff is entitled to the sanction of an adverse inference with regard to the relevant, yet destroyed, Request for Urinalysis Test forms.

With regard to Plaintiff's request that Defendants disclose the identity of any confidential informants who provided the information on which Defendants' decision to subject Plaintiff to urinalysis is based, Defendants maintain that they have not such information regarding the identity of such confidential informants and, alternatively, even if such information did exist, the information need not be produced based on "serious security concerns." Sleight Declaration ¶ 21. Insofar as the predicate 'suspicion' for any urinalysis test to which Plaintiff was subjected did not include statements made by a confidential informant,[4] the information is not, as Defendants assert, Sleight Declaration ¶ 21, protected from disclosure by the confidential informant privilege. In support of this assertion, Defendants rely on *Giakoumelos v. Coughlin*, 88 F.3d 56, 52 (2d Cir. 1996), where the Second Circuit, recognizing the "unique" requirements of prison security, held that the non-disclosure of a confidential informant's identity did not violate due process in the context of a prison disciplinary proceeding. Nevertheless, Defendants fail to reference any case where the same confidential informant privilege was applied in the context of a § 1983 civil rights action, and the only such case found by the court's research, *Linares v. Mahunik*, 2008 WL 2704895 (N.D.N.Y. July 7, 2008), for reasons unexplained, relies, incorrectly, on

---

[4] The court notes that reason for the November 28, 2008 urinalysis has been designated as "suspicious," Discovery Responses at 14, Bates No. 000001, yet nowhere on the related "Request for Urinalysis Test" form is there any indication that such "suspicion" was based on information provided by a confidential informant. Id. At 15, Bates No. 000002.

another district court case where the confidential informant privilege was applied in the context of a disciplinary proceeding.   Moreover, Defendants fail to assert any justification for the establishment of such privilege as required by Fed.R.Evid. 501.

Alternatively, even if the informant's privilege did apply, Defendants have waived it.  Specifically, although Defendants, objected to providing the identity of any informants to Plaintiff, Response to Discovery Requests at 4-6, Defendants did not specify that such objection was a "privilege," nor did Defendants move for a protective order or file any privilege log with regard to the requested information.  As such, Defendants have waived any such privilege.  *See Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 237-38 (W.D.N.Y. 1998) (holding failure to comply with rules governing objections to discovery based on privilege or confidentiality, including specifically identifying each document or communication and the type of privilege asserted in a privilege log, waives the privilege).

Accordingly, as the informant's privilege, as relied on by Defendants is inapplicable to this action, Defendants are ORDERED to, **within ten (10) days**, either produce to Plaintiff the names of any informants who provided statements giving rise to the suspicion for any urinalysis test to which Plaintiff was subjected at Elmira Correctional Facility, or to provide an affidavit from a DOCCS official, with the requisite personal knowledge, establishing no such informants were involved in the decision to subject Plaintiff to any urinalysis test.

Insofar as Plaintiff moves to compel information regarding death threats against him, Defendants' assert such records are within the custody and control of the New York State Inspector General's Office. Sleight Declaration ¶ 22.  While it is true that a

party is not required to produce documents that are not within its possession or control, *see Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain"), Defendants, again, have failed to support their assertion with an affidavit made by a DOCCS official with personal knowledge. As such, Defendants are ORDERED to, **within ten (10) days**, either provide an affidavit establishing Defendants are not in possession of, nor can obtain, the requested information, or produce the requested information.

### 3.     Motion for Sanctions

Plaintiff separately moves under Fed.R.Civ.P. 11 for sanctions based on Defendants' failure to serve Plaintiff with a copy of Defendants' Memorandum of Law in opposition to Plaintiff's motion to amend, Defendants' papers filed in opposition to Plaintiff's motion to strike the amended answer, and Defendants' answer filed in February 2011. There is no merit to this request.

First, Defendants' Memorandum of Law filed in opposition to Plaintiff's motion to amend (Doc. No. 24), is accompanied by a certificate of service (Doc. No. 24 at 9) which creates a presumption of receipt. *See Lopes v. Gonzales*, 468 F.3d 81, 85 (2d Cir. 2006) (recognizing a presumption of receipt where court's record contained proper certificate of service setting forth document was mailed to party at his last known address). Here, a review of such certificate of service establishes the address where Defendants' mailed the memorandum of law is the same as that appearing on the docket for Plaintiff and establishes the presumption that Plaintiff received the

memorandum.[5]

Second, Defendants' opposition to Plaintiff's motion to strike Defendants' answer to the Amended Complaint was not filed until September 14, 2012, after Plaintiff filed his motion seeking Rule 11 sanctions. As such, that portion of Plaintiff's motion is now moot.

Finally, with regard to Defendants' answer to the original complaint, a proper certificate of service accompanying the answer (Doc. No. 17 at 5), establishes the answer was mailed to Plaintiff's address of record.[6]

Accordingly, there is no merit to Plaintiff's Motion for Sanctions.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motions to strike (Doc. No. 37), and for sanctions (Doc. No. 42), are DENIED; Plaintiff's motion to compel discovery (Doc. No. 38), is GRANTED. Defendants are ORDERED to produce **within ten (10) days**, the identity of any informants who provided statements giving rise to the suspicion for any of the urinalysis tests to which Plaintiff was subjected, or an affidavit made by a DOCCS official with personal knowledge explaining that no such informants were involved; Plaintiff is entitled to an adverse inference instruction at trial regarding the spoliated Requests for Urinalysis Test forms.

---

[5] The court notes that even if Plaintiff did not receive Defendants' memorandum of law filed in opposition to Plaintiff's motion to amend, the issue is now moot given Plaintiff's motion to amend has been granted, with Plaintiff filing the Amended Complaint on January 30, 2012 (Doc. No. 34).

[6] Because the Amended Complaint supersedes the original complaint, even if Defendants have failed to serve Plaintiff with a copy of the answer to the original complaint, Plaintiff cannot attribute any prejudice to such failure.

SO ORDERED.

/s/ *Leslie G. Foschio*

---
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   March 28, 2013
         Buffalo, New York

**Any appeal of this Decision and Order must be taken to by filing a notice of appeal with the Clerk of the Court within 14 days of the filing of this Decision and Order pursuant to Fed. R. Civ. P. 72(a).**