UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRANDON HOLMES,

                              Plaintiff,

            v.

BRIAN FISCHER, Commissioner of the New York
   State Department of Correctional Services, *et al.*,

                              Defendants.
_____

**DECISION
and
ORDER**

**09-CV-00829S(F)**

APPEARANCES:         BRANDON HOLMES, *Pro Se*
                     89-B-1812
                     Sing Sing Correctional Facility
                     354 Hunter Street
                     Ossining, New York 10562-5498

                     ERIC T.  SCHNEIDERMAN
                     Attorney General, State of New York
                     Attorney for Defendants
                     DAVID J. SLEIGHT
                     Assistant New York Attorney General, of Counsel
                     Main Place Tower
                     Suite 300A
                     350 Main Street
                     Buffalo, NY 14202

## JURISDICTION

        This case was referred to the undersigned on July 19, 2010, by Honorable

William M. Skretny, for all pretrial proceedings.  The matter is presently before the court

on Defendants' motions to amend the Case Management Order (Doc. No. 55), filed

February 12, 2012, and for relief from judgment or order (Doc. No. 62), filed April 8,

2013, as well as Plaintiff's motions to appoint counsel and to proceed *in forma pauperis*

(Doc. No. 67), filed April 11, 2013, and to compel discovery (Doc. No. 72), filed May 6,

2013, and Plaintiff's request for reconsideration (Doc. No. 66), filed April 10, 2013.

**BACKGROUND and FACTS**[1]

Plaintiff Brandon Holmes ("Plaintiff" or "Holmes"), currently incarcerated at Sing Sing Correctional Facility ("Sing Sing"), and proceeding *pro se*, commenced this § 1983 action on September 22, 2009, alleging violations of his federal civil rights and pendent New York common law claims based on events that occurred while Plaintiff was incarcerated at the Elmira Correctional Facility ("Elmira" or "ECF"), and Southport Correctional Facility ("Southport").  Defendants to this action are all current or former employees of New York State Department of Corrections and Community Supervision ("DOCCS").  On January 30, 2012, Plaintiff, with leave of the court, filed an amended complaint (Doc. No. 34) ("Amended Complaint"), asserting eight claims for relief challenging the conditions of his confinement, an alleged denial of medical treatment, repeatedly being subjected to non-random urinalysis testing, and alleged retaliation for exercising his civil rights.  Defendants' answer to the Amended Complaint was filed February 9, 2012 (Doc. No. 36) ("Answer").  With regard to his claims challenging his repeated non-random urine tests as in violation of the Fourth Amendment, Plaintiff specifically alleges that despite having no history of drug use, Plaintiff was repeatedly subjected to such urinalysis on March 10, 2007, June 2007,[2] July 14, 2007, July 27, 2007, February 2, 2008, August 27, 2008, and November 18, 2008, "based upon 'suspicion'" Defendants attribute to "a 'reliable confidential informant'" who had advised DOCCS staff at the correctional facility that Plaintiff was using drugs.  Amended

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] Plaintiff does not specify the precise date in June 2007 on which he underwent urinalysis.

2

Complaint, Facts ¶¶ 1-3, 15-16.  According to Plaintiff, because DOCCS policy requires a DOCCS official at the rank of lieutenant or higher to approve each urinalysis request, where a urinalysis request is based on suspicion attributed to a confidential informant, unless the DOCCS official investigates and confirms the validity of the confidential informant's statement assertion regarding another inmate's abuse of drugs, it is essentially the confidential informant who submits the inmate for urinalysis testing. Amended Complaint ¶ 7.  Plaintiff further maintains the urinalysis requests challenged here were "rubber stamped" by Wenderich, ECF Lieutenant Zigenfris ("Zigenfris"), and ECF Superintendent Mark Bradt ("Bradt"). *Id.* ¶¶ 23-29.  It is undisputed that none of the urinalysis tests to which Plaintiff was subjected was positive.  Plaintiff also alleges in further support of his claim that Defendants corroborated with Confidential Informants that on November 8, 2008, his cell was searched in connection with an anonymous death threat lodged by the confidential informants upon whose information the Form 2082s were based, resulting in the discovery of three packs of cigarettes in excess of the limit allowed under DOCCS policy, for which Plaintiff was issued a minor misbehavior report and placed in keep-lock confinement for six days.  Amended Complaint ¶¶ 32-34.

In May 2011, Plaintiff served Defendants with a request for production of documents ("Discovery Demands"),[3] to which Defendants filed responses on July 5, 2011 (Doc. No. 21) ("Response to Discovery Demands"), and supplemental responses

---

[3] Although required by Rule 5.2(f) of the Local Rules of Civil Procedure - W.D.N.Y., Plaintiff did not file a copy of his Discovery Demands.  Nor is it clear from the record when Defendants were served with the Discovery Demands other than a statement on p. 31 in a memorandum of law filed in support of Plaintiff's Motion to Compel (Doc. No. 39), that Plaintiff served his Discovery Demands on Defendants in "May, 2011."

on November 21, 2011 (Doc. No. 27) ("Supplemental Response to Discovery Demands").  Plaintiff, asserting Defendants failed to include in their discovery responses the Requests for Urinalysis Test forms ("Form 2082s") related to all non-random urinalysis testing to which Plaintiff was subjected between July 2006 and July 2008,[4] the identity of the confidential informants who purportedly provided the information implicating Plaintiff in the use of illegal drugs, and information Plaintiff asserts is in the possession of New York's Inspector General's Office regarding death threats allegedly made against Plaintiff, filed a motion to compel discovery and for sanctions on April 4, 2012 (Doc. No. 38) ("Motion to Compel"), a motion for sanctions pursuant to Fed.R.Civ.P. 11 ("Rule 11"), on August 6, 2012 (Doc. No. 42) ("Motion for Sanctions"), and an addendum to his Motion to Compel, and for Sanctions on August 30, 2012 (Doc. No. 48) ("Plaintiff's Addendum").

On February 12, 2013, Defendants filed a motion amend the case management order (Doc. No. 55) ("Motion to Amend"), supported by the Declaration of Assistant Attorney General ("A.A.G.") David J. Sleight ("Sleight") (Doc. No. 56) ("Sleight's Declaration - Motion to Amend").  On March 1, 2013, Plaintiff filed his Declaration in Opposition to Defendant's Declaration to Amend Case Management Order (Doc. No. 58) ("Plaintiff's Declaration - Motion to Amend").  On March 6, 2013, Defendants filed in

---

[4] According to Defendants' Response to Discovery Demands, Plaintiff requested:

"Copy of all "urinalysis request forms" for urinalyses Elmira Prison Officials subjected me to in March 10, 2007, June, 2007; July 14, 2007, July 27, 2007; Febreuary [*sic*] 2, 2008; July 25, 2008, August 27, 2008; August 30, 2008. This requests includes but is in no way limited to, the February 2, 2008 urinalysis request and the August 27, 2008 Zigenfris approved request. This request also covers any and all urinalysis Elmira Prison Officials subjected Plaintiff to while in Elmira Prison between July, 2006 and December, 2008."

Response to Discovery Demand No. 3.

further support of the Motion to Amend a Declaration of A.A.G. Sleight (Doc. No. 59) ("Sleight's Reply Declaration - Motion to Amend").  Without this court's permission, Plaintiff filed on March 15, 2013, the Affirmation in Opposition to Defendants' Declaration of March 6, 2013 Seeking CMO Extension (Doc. No. 60) ("Plaintiff's Sur-Reply Affirmation - Motion to Amend").

        In a Decision and Order filed March 28, 2013 (Doc. No. 61) ("March 28, 2013, D&O"), the undersigned, *inter alia*, because Defendants were unable to produce the Form 2082s, some of which pertained to urinalysis testing of Plaintiff after he commenced this action, granted Plaintiff's motion to compel (1) ordering Defendants to either produce to Plaintiff, within ten days, an affidavit establishing Defendants are not in possession of, nor can obtain, requested information regarding death threats allegedly made against Plaintiff in November 2008, at Elmira, or produce the requested information, (2) sanctioning Defendants with an adverse inference regarding the spoliated Form 2082s, requested by Plaintiff, and (3) ordering Defendants either to produce to Plaintiff the identity of any informants who provided statements giving rise to the suspicion for any of the urinalysis tests to which Plaintiff was subjected, or an affidavit made by a DOCCS official with personal knowledge explaining that no such informants were involved.  March 28, 2013, D&O at 14.  On April 8, 2013, Defendants filed a Motion for Reconsideration of the March 28, 2013 D&O (Doc. No. 62) ("Defendants' Motion for Reconsideration"), supported by the Declaration of DOCCS Deputy Superintendent of Security at ECF Stephen J. Wenderlich (Doc. No. 63) ("Wenderlich's Declaration") with attached exhibits A through E ("Defendants' Exh(s). __").  Unrelated to the Motion to Amend, Defendants also filed on April 8, 2013, the

Declaration of A.A.G. Sleight (Doc. No. 64) ("Sleight Declaration"), in which Sleight explains that, as directed by the March 28, 2013 D&O, Defendants have provided Plaintiff with the Investigative Report from DOCCS Inspector General's Office ("IG Report") regarding the "death threats" allegedly made against Plaintiff in November 2008, attaching a copy of the IG Report as an exhibit.  On April 10, 2013, Plaintiff filed the Affirmation in Support of Motion for Harsher Discovery Sanctions: Reconsideration Application (Doc. No. 66) ("Plaintiff's Request for Reconsideration").[5]

On April 11, 2013, Plaintiff filed a Motion for Appointment of Counsel and to Proceed *In Forma Pauperis* (Doc. No. 67) ("Motion for Counsel"), supported by the attached Affidavit in Support of Motion to Proceed *In Forma Pauperis* and for Counsel Assignment ("Plaintiff's Affidavit - Motion for Counsel"), and an Affirmation in Opposition to Defendants' Declaration of March 6, 2013 Seeking CMO Extension (Doc. No. 68) ("Plaintiff's Further Sur-Reply Affirmation - Motion to Amend").  On April 18, 2013, Plaintiff filed a Declaration in Opposition to Defendants' Motion for FRCP 60(b) Relief and Plaintiff's Declaration for Discovery Sanctions and Recusal of Defense Counsel (Doc. No. 69) ("Plaintiff's Response - Defendants' Motion for Reconsideration").

By letter to the undersigned filed April 22, 2013 (Doc. No. 70) ("April 22 Letter"), Plaintiff submitted further arguments in opposition to Defendants' Motion for Reconsideration.[6]  On May 6, 2013, Plaintiff filed the Motion to Renew Discovery Motion

---

[5] Although not formerly filed as a motion for reconsideration, the court will treat it as such.

[6] Without explanation, the April 22 Letter was re-filed on April 25, 2013 (Doc. No. 71).

Pursuant to FRCP 60(b) (Doc. No. 72) ("Second Motion to Compel"),[7] supported by the attached Verified Declaration in Support of Motion for FRCP 60(b) Relief ("Plaintiff's Declaration - Second Motion to Compel"), with exhibits 1 and 2 ("Plaintiff's Exh(s). _").

On May 10, 2013, Defendants filed in further support of Defendants' Motion for Reconsideration the Declaration of A.A.G. Sleight (Doc. No. 73) ("Sleight's Reply Declaration - Defendants' Motion for Reconsideration"), and the Declaration of A.A.G. Kim S. Murphy ("Murphy") (Doc. No. 74) ("Murphy Declaration - Defendants' Motion for Reconsideration").  On June 4, 2013, Plaintiff filed the Additional Declaration in Opposition to Defendants' Opposition to Reconsideration (Doc. No. 75) ("Plaintiff's Additional Declaration - Defendants' Motion for Reconsideration").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion to Amend is DENIED; Defendants' Motion for Reconsideration is DENIED; Plaintiff's Request for Reconsideration is DENIED; Plaintiff's Motion to Proceed *In Forma Pauperis* and for Appointment of Counsel is GRANTED; Plaintiff's Second Motion to Compel is GRANTED in part and DENIED in part.

## DISCUSSION

### 1.    Motion to Amend

---

[7] The court's review of the Motion to Renew Motion to Compel establishes Plaintiff seeks to compel discovery of documents, the existence of which Plaintiff only recently was made aware; the court thus treats the document as a motion to compel.

Defendants move to amend the March 10, 2011 Scheduling Order (Doc. No. 20) ("Scheduling Order"), arguing extensive motion practice in this action has rendered the various litigation deadlines in the Scheduling Order "stale."  Sleight Declaration - Motion to Amend, ¶¶ 7-9.  Defendants specifically point to such motions as Defendants' motion seeking dismissal for failure to state a claim, or a more definitive statement (Doc. No. 3), and Plaintiff's motions to file an amended complaint (Doc. No. 22), to strike Defendants' answer to the Amended Complaint (Doc. No. 37), and to compel discovery (Doc. No. 38), and for sanctions (Doc. No. 42).  *Id.* at ¶ 7.  Defendants further assert they "have also produced extensive documents in response to plaintiff's discovery demands" and that "[p]aper discovery is essentially complete."  *Id.* ¶ 8.  Defendants maintain they need to depose Plaintiff after which Defendants anticipate filing a dispositive motion.  *Id.* ¶ 9.

In opposition, Plaintiff asserts that Defendants have frustrated discovery in an attempt to delay this action, and now seek an extension of time to file dispositive motions.  Plaintiff's Declaration - Motion to Amend ¶¶ 3-4.  According to Plaintiff, despite asserting they have complied with discovery, Defendants have denied Plaintiff's discovery requests, thereby necessitating Plaintiff's motions to compel discovery and for sanctions which were the subject of the March 28, 2013 D&O.  *Id.* ¶ 4.  Plaintiff opposes being subjected to a "late deposition" given that substantial time has elapsed, Defendants have continued to deny Plaintiff discovery that could assist Plaintiff in such deposition, and Defendants have provided no reason for failure to timely depose Plaintiff.  *Id.* ¶¶ 4(b) - 5.

In further support of their Motion to Amend, Defendants argue that Plaintiff's

dissatisfaction with the discovery process does not justify denying the Motion to Amend, thereby denying Defendants discovery they need to defend this action,  Sleight's Reply Declaration - Motion to Amend ¶  2, and that Plaintiff's assertions that Defendants have refused to comply with and repeatedly ignored the Scheduling Order "ring hollow" in light of Plaintiff's own failure to timely file his motions seeking leave to file an amended complaint and to compel discovery. *Id.* ¶ 3.  According to Defendants, they have provided the requisite "good cause" for leave to amend the Scheduling Order insofar as the Amended Complaint was not filed until January 30, 2012, only two months before the discovery cutoff on March 31, 2012. *Id.* ¶ 4.

In further opposition to the Motion to Amend, Plaintiff argues that Defendants' assertion that Plaintiff's motions for leave to file an amended complaint and to compel discovery were untimely ignores the Supreme Court's holding in *Houston v. Lack*, 487 U.S. 266, 270 (1988), that a *pro se* inmate's legal papers are considered filed when they are delivered to the prison official responsible charged with forwarding the papers to the district court, Plaintiff's Sur-Reply Affirmation - Motion to Amend ¶ 4, and that Defendants have utterly failed to set forth any good cause in support of their Motion to Amend. *Id.* ¶ 5.  By letter to the undersigned dated March 22, 2013 ("March 22, 2013 Letter"),[8] Plaintiff explains that amending the Scheduling Order as Defendants request will give Defendants an opportunity to depose Plaintiff and file dispositive motions despite Defendants' frustrating Plaintiff's discovery efforts.  March 22, 2013 Letter at 2.

---

[8] The March 22, 2013 Letter is attached to Plaintiff's Further Sur-Reply Affirmation - Motion to Amend.  Plaintiff's Further Sur-Reply Affirmation - Motion to Amend is a copy of Plaintiff's Sur-Reply Affirmation - Motion to Amend, except for the attached March 22, 2013 Letter.

A motion to amend a court's scheduling order is made under Fed.R.Civ.P. 16(b)(4) which provides "[a] schedule may be modified only for good cause and with the judge's consent."  To establish the requisite "good cause" for amending a scheduling order, the party seeking amendment must demonstrate that the deadline cannot be met "despite the diligence of the party seeking the extension."  Fed.R.Civ.P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)).  Where, however, the court determines that the deadline cannot be met, despite the diligence of the party seeking the extension, the moving party has demonstrated good cause and the motion to amend the scheduling order and extend deadlines may be granted.  *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000).  In the instant case, Defendants have failed to establish the requisite good cause to amend the scheduling order.

Preliminarily,  the Scheduling Order provides that "[n]o extension of the above cutoff dates will be granted except upon written application, *filed prior to the cutoff date*, showing good cause for the extension."  *Id.* ¶ 5 (italics added).  Defendants, however, did not file their Motion to Amend until February 12, 2013, almost nine months after the May 31, 2012 deadline for filing dispositive motions, Scheduling Order ¶ 4, and nearly 11 months after the March 16, 2012 deadline for the close of discovery, *id.* ¶ 3, the two deadlines Defendants seeks to extend.  As such, Defendants have not complied with the Scheduling Order's direction that any motion to amend the deadlines must be filed before the relevant deadline.

Further, Defendants' papers in support of their Motion to Amend fail to establish any good cause for the amendment and are devoid of any explanation as to why the

10

original deadlines established by the Scheduling Order could not, despite Defendants'

diligence, have been met, and Defendants' attempt to attribute their need for an

extension of the Scheduling Orders' deadlines to Plaintiff's filing of motion ignores the

fact that the Scheduling Order specifically directed that any extensions were to be

requested prior to the relevant cutoff dates.  Nor have Defendants explained why they

were unable to depose Plaintiff before the March 30, 2012 discovery cutoff, given that

Plaintiff's Amended Complaint was filed two months earlier on January 30, 2012.

Simply put, Defendants had ample time to move to amend the Scheduling Order before

all the deadlines established therein had expired, in direct contradiction to the

Scheduling Order's directive, yet Defendants, without any explanation for the delay, did

not file the instant motion until February 12, 2013.

Nor have Defendants attributed their failure to timely file their Motion to Amend

to excusable neglect which, under Fed.R.Civ.P. 6, a district court has discretion "to

extend the time during which an act must be done 'on motion made after the time has

expired if the party failed to act because of excusable neglect.'"  *In re American Express*

*Financial Advisors Securities Litigation*, 672 F.3d 113, 129 (2d Cir. 2011) (quoting

Fed.R.Civ.P. 6(b)(1)(B)).  In determining whether to attribute a party's failure to timely

act to excusable neglect, federal courts, including the Second Circuit Court of Appeals,

consider four factors ser forth by the Supreme Court.  *Id.* (citing *Pioneer Investment*

*Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993)

(construing parallel provision, Fed.Rules Bankr.Proc. Rule 9006(b)(1)).  These factors

include

the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993) (construing Bankruptcy Rule 9006(b)).

"While those factors are the central focus of the inquiry, the ultimate determination depends upon a careful review of 'all relevant circumstances.'" *In re American Exp. Financial Advisors Securities Litig.*, 672 F.3d at 129 (quoting *Pioneer Investment Services Co.*, 507 U.S. at 395). *See also In re: PaineWebber Ltd. P'Ships Litig.*, 147 F.3d 132, 135 (2 Cir. 1998) ("To establish excusable neglect, . . . a movant must show good faith and a reasonable basis for noncompliance."). Furthermore, the district court uses its discretion in applying the excusable neglect standard to the factual circumstances. *In re American Exp. Financial Advisors Securities Litig.*, 672 F.3d at 130. Applying the excusable neglect standards to the circumstances of the instant case does not support finding excusable neglect to permit amending the Scheduling Order.

In particular, not only have Defendants not put forth any argument suggesting excusable neglect as a viable ground for their failure to timely move to extend the Scheduling Order, the facts of the case fail to establish any reasonable basis for the noncompliance. Defendants' filing of the Motion to Amend nine months after the May 31, 2012 deadline for filing dispositive motions, and 11 months after the March 16, 2012 deadline for the close of discovery, is prejudicial to Plaintiff and will only further delay the action which has been pending in this court for close to four years. Nor have Defendants attributed their belated motion to any circumstances beyond their control. Simply put, no ground capable of supporting a finding of excusable neglect under Rule

6 are present.

Insofar as Defendants maintain Plaintiff has filed motions to file the amended complaint and to compel discovery beyond the deadlines established by the Scheduling Order, a review of the case file establishes that the two motions on which Defendants rely in support of this argument were timely placed in the hands of prison officials. Specifically, although Plaintiff's motion to file an amended complaint (Doc. No. 22), was not filed until August 3, 2011, five days after the Scheduling Order's July 29, 2011 deadline, and Plaintiff's motion to compel discovery (Doc. No. 38), was not filed until April 4, 2012, five days after the Scheduling Order's March 30, 2012 deadline, it is settled that a *pro se* inmate's legal documents are deemed filed as of the date the inmate gives the documents to the prison officials to be forwarded to the court.  *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (extending Supreme Court's holding in *Houston v. Lack*, 487 U.S. 266, 270 (1988), that *pro se* inmate's appeal is considered filed when inmate delivers appeal papers to prison officials responsible for forwarding legal papers to court for filing to complaints filed by *pro se* inmates); *see also Devers v. New York State Dep't. Of Corr. Servs.*, 2011 WL 4839425, at * 2 (W.D.N.Y. Oct. 12, 2011) ("Under the so-called 'prison mailbox rule," a *pro se* inmate's pleading or motion is considered filed as of the date it is given to prison officials for forwarding to the court clerk.").  Further, "[s]ince the exact date of mailing in this case is not known, the court looks to the date that plaintiff signed [the relevant papers]."  *Mitchell v. Bell*, 2006 WL 3043126, at *4 (N.D.N.Y. Oct. 23, 2006).  Significantly, Plaintiff's motion to file an amended complaint was signed on July 29, 2011, and his motion to compel was signed on March 23, 2012.  Plaintiff also avers his motions to file an amended complaint and to

compel were timely delivered to the prison officials responsible for filing the papers such

that the motions should be considered timely filed in accordance with the Supreme

Court's decision in *Houston*, 487 U.S. at 270.  Plaintiff's Sur-Reply Affidavit - Motion to

Amend ¶ 4.  The motion are thus deemed timely and the fact they did not appear on the

docket until a few days after their respective deadlines cannot fairly be attributed to any

dereliction on the part of Plaintiff.

Accordingly, Defendants have failed to establish any good cause to amend the

Scheduling Order and their Motion to Amend is DENIED.

**2.      Reconsideration of March 28, 2013 D&O**

Defendants move for reconsideration of the March 28, 2013 D&O sanctioning

Defendants with an adverse inference regarding the spoliation of the Form 2082s

Defendants failed to produce to Plaintiff in response to his Discovery Demands, as well

as the requirement that Defendants disclose to Plaintiff the identity of those confidential

informants who provided information giving rise to the suspicion on which some of the

urinalysis tests allegedly were based, or provide an affidavit from a DOCCS official with

personal knowledge attesting that no such informants were involved in the decision to

subject Plaintiff to non-random urinalysis based on suspicion.  Defendants' Motion for

Reconsideration.  In support, Defendants submit Wenderlich's Declaration explaining

that as Deputy Superintendent of Security at Elmira, Wenderlich oversees DOCCS

inmate urinalysis testing program at Elmira.  Wenderlich's Declaration ¶¶ 1, 4.

According to Wenderlich, upon being advised by Defendants' counsel that

Defendants' failure to provide Plaintiff with the requested Forms 2082s associated with

the urinalysis tests Plaintiff challenges in this action has resulted in a court order

directing that a jury instruction may be given at trial instructing the jury that they may

draw an adverse inference that such Form 2082s were favorable to Plaintiff's claims, as

well as an order directing Defendants disclose the identification of the confidential

informants or an affidavit from someone at DOCCS with knowledge that no such

informants exists, Wenderlich Declaration ¶ 5, Wenderlich conducted his own inquiry

into what happens to the Form 2082s after the results of the tests are received. *Id.* ¶ 12.

Wenderlich learned from his investigation that after a urinalysis test results are

received, the Form 2082s are sent to the DOCCS Captain whose secretary enters the

results into DOCCS's computerized drug testing system and then files the forms in the

Captains's office.   *Id.*   As the Form 2082s accumulate, they are periodically boxed,

labeled, and stored in the correctional facility's basement archives.  *Id.*  Upon

determining the requested Form 2082s were likely archived in the basement of ECF,

Wenderlich designated someone[9] to search the archived forms and the relevant Form

2082s were located.  *Id.* ¶ 13.  Wenderlich attributes the delay in producing the Form

2082s to the fact that personnel in ECF's Inmate Records Office who initially were

responsible for responding to the demands were unaware that old Form 2082s were

archived after being removed from the Captain's office. *Id.* ¶ 14.  Because the forms

have now been located, Defendants request the undersigned reconsider the decision to

sanction Defendants with an adverse inference regarding the spoliated Form 2082s, as

well as the order to disclose the identity of the informants whose information gave rise

---

[9] The record does not identify the person Wenderlich designated for this task.

to the suspicion resulting in the urinalysis testing Plaintiff challenges.  *Id.* ¶ 15. According to Wenderlich, confidential informants are regarded by other inmates as "snitches" such that disclosing the names of confidential informants places the informants at risk of serious physical harm, even if the informant has been transferred to another correctional facility, because the information tends to travel.  *Id.* ¶¶ 15-16.

Plaintiff also seeks reconsideration of the March 28, 2013 D&O, asserting the record establishes Defendants spoliated the Form 2082s Plaintiff demanded, and that had such information been provided to Plaintiff, those DOCCS officials whose names appear on the Form 2082s would have been added as defendants to this action. Plaintiff's Request for Reconsideration ¶¶ 2-5.  As such, Plaintiff requests the undersigned consider imposing harsher sanctions such as preclusion, dispositive relief, and striking the answer.  *Id.* ¶ 6.  According to Plaintiff, because the Form 2082s were spoliated, Plaintiff needs to review all the prison records Defendants Wenderlich, Zigenfris, and Bradt claimed to have reviewed in response to the urinalysis requests because such requests would include and incorporate all urinalysis tests to which Plaintiff was subjected.  *Id.* ¶ 10.

In opposition to Defendants' Motion for Reconsideration, Plaintiff again requests the court impose harsher sanctions against Defendants in connection with the spoliation of the Form 2082s, and failure to disclose the confidential informants' identity, and also requests that Defendants' counsel be removed from the action.  Plaintiff's Response - Defendants' Motion for Reconsideration ¶¶ 2-3.  Plaintiff also recounts how Defendants' spoliation of the Form 2082s and failure to disclose the confidential informants' identities has frustrated Plaintiff's litigation of this action.  *Id.* ¶¶ 4-6.

16

According to Plaintiff, that Defendants discovered the requested Form 2082s and IG

Report immediately following the March 28, 2013 D&O establishes Defendants have

engaged in "a discernable pattern of prevarication. . . ," *id.* ¶¶ 7-8, and Plaintiff objects

to the fact that on the IG Report Defendants disclosed, the confidential informant's

name is redacted, asserting that any danger posed by the revelation of the informant's

identity can be avoided by placing the informant in protective custody, assuming the

informant remains incarcerated, a fact on which Defendants have been silent. *Id.* ¶¶ 8,

17-20.  Plaintiff further maintains that Defendants' misrepresentations that the Form

2082s had been destroyed in the normal course of business demonstrates Defendants

intentionally mislead Plaintiff and requires further sanctions.  *Id.* ¶¶ 14-16, 21, 27.

Plaintiff also points out that Defendants continue to assert that the identity of

confidential informants named in both the Form 2082s and the IG Report is privileged

information, yet have failed to produce any relevant privilege log and the failure to do so

waives any privilege that could be asserted requiring Defendants disclose the identity of

all confidential informants so Plaintiff can sue the informants. *Id.* ¶¶ 22(b)-24, 26.

Plaintiff also contends Defendants must produce information regarding the September

3, 2008 Superintendent's Hearing on disciplinary charges against another inmate,

Jermaine Gilmore ("Gilmore"), in which it was established that the urinalysis testing to

which Plaintiff and Gilmore were subjected on August 27-28, 2008, were based on a

Form 2082 bearing the forged signature of DOCCS Official "Harvey." *Id.* ¶ 9.  Plaintiff

maintains when he questioned Wenderlich about the forgery revelation, Wenderlich

responded that the urinalysis to which Plaintiff and others had been subjected was a

result of a "mistake in paperwork," *id.* ¶ 10, which Plaintiff maintains necessitates

disclosure of such paperwork to establish Wenderlich's deliberate indifference to Plaintiff's complaints about urinalysis harassment. *Id.* ¶¶ 11, 25. Finally, Plaintiff maintains that if it is discovered that A.A.G. Sleight was involved in the misrepresentations regarding the spoliation of evidence, then the witness/advocate rule, 22 N.Y.C.R.R. § 1200.00 Rule 3.7(a) and (b) (prohibiting attorney from acting as advocate before a tribunal in a matter in which attorney is likely to be a witness on a significant issue of fact), requires Sleight recuse himself from representing Defendants in this matter. *Id.* ¶ 28.

In further support of reconsideration, Defendants argue that because the Form 2082s that allegedly were issued upon advice received from confidential informants implicating Plaintiff in drug abuse, and which were recently produced to Plaintiff, do not contain the names of such informants, Defendants' failure to earlier produce the forms did not delay Plaintiff's discovery of the alleged informants' identities, and thus did not result in any prejudice to Plaintiff, rendering the adverse inference sanction imposed by the March 28, 2013 D&O unnecessary. Sleight's Reply Declaration - Defendants' Motion for Reconsideration ¶ 6. Defendants also contend that their production of the IG Report prepared in connection with the anonymous death threats made against Plaintiff in November 2008, albeit redacted as to the confidential informant's identity, establishes that the confidential informant made no death threats against Plaintiff; rather, the confidential informant merely advised that others were threatening to harm Plaintiff. *Id.* ¶ 7. Further, when the IG investigator, who was able to identify the confidential informant only because the Captain recognized the informant's handwriting, confronted the informant regarding the anonymous letter, the informant maintained he

had no proof any inmates were planning to harm Plaintiff, such that the informant's allegations were unfounded.  *Id.*  Accordingly, Defendants assert that revelation of the identity of confidential informants will not assist Plaintiff's pursuit of his claims against Defendants, particularly in light of the risk of harm to such informants upon disclosure of their identities.  *Id.* ¶¶ 9, 11.

Defendants take further issue with Plaintiff's assertions that Defendants intentionally misrepresented they attempted in good faith to locate the Form 2082s responsive to Plaintiff's Discovery Demands given that A.A.G. Sleight was not with the Attorney General's office when Plaintiff commenced this action and served his Discovery Demands in Jule 2011.  Sleight Reply Declaration - Defendants' Motion for Reconsideration ¶ 12.  A.A.G.Kim S. Murphy ("Murphy") prepared Defendants' July 5, 2011 responses to Plaintiff's Discovery Demands.  *Id.*; Murphy Declaration - Defendants' Motion for Reconsideration ¶ 2.  According to A.A.G. Murphy, upon receiving Plaintiff's Discovery Demands, she followed the Attorney General Office's standard practice for responding to an inmate's discovery requests by forwarding the Discovery Demands to the appropriate correctional facility's Inmate Records Coordinator ("IRC"), who then gathered the requested material which it forwarded to the Attorney General's Office.  Murphy Declaration - Defendants' Motion for Reconsideration ¶¶ 3-4.  With regard to the Form 2082s and identities of confidential informants Plaintiff requested, the ECF IRC advised that ECF files contained no documents responsive to such request. *Id.* ¶ 5.  When Plaintiff filed his Motion to Compel, A.A.G. Murphy confirmed that the response by DOCCS regarding such demanded documents confirmed the Form 2082s no longer existed and there was no

record as to the identity of the confidential informants.  *Id.* ¶ 6.

Plaintiff further argues with regard to reconsideration of the March 28, 2013 D&O requested by Defendants that Defendants' papers filed in further support of Defendants' Motion for Reconsideration fails to set forth any ground for reconsideration, and only reinforces Plaintiff's assertion that Defendants intentionally misrepresented the availability of the Form 2082s, both A.A.G. Sleight and Murphy have "thrown" the ECF IRC "under the bus" to deflect attention to such misrepresentations, requiring Sleight recuse himself.  Plaintiff's Additional Declaration - Defendants' Motion for Reconsideration ¶¶ 2-4.  Plaintiff maintains he intends to depose or serve interrogatories on each of the DOCCS officials named in the recently produced Form 2082s in an attempt to learn the identity of the confidential informants, and that Defendants should be precluded from opposing such discovery after the discovery deadline given the delay is attributable only to Defendants' misrepresentations. *Id.* ¶¶ 5-6.  Plaintiff further asserts information regarding the August 28, 2008 urinalysis of Plaintiff and Gilmore for which, because Sgt. Harvey admitted his signature was falsified on the relevant Form 2082s, the charges were dropped against Gilmore, is relevant to proving Plaintiff's claim that Defendants were engaged in a conspiracy to harass Plaintiff by subjecting him to urinalysis testing based on falsified suspicion. *Id.* ¶¶ 8-9. Plaintiff also disputes Defendants' assertion that the IG investigator's conversation with the confidential informant regarding death threats against Plaintiff revealed only that the informant was not the author of such threats.  *Id.* ¶ 10.

Motions for reconsideration of an nondispositive order are considered pursuant to Fed.R.Civ.P. 60 ("Rule 60"), which provides "the court may correct a clerical mistake

or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. . . ."  Fed.R.Civ.P. 60(a).  Grounds for such relief include, as relevant here, "mistake, inadvertence, surprise, or excusable neglect," and "any other reason that justifies relief."  Fed.R.Civ.P. 60(b)(1) and (6).  A motion for reconsideration pursuant to Rule 60(b) "is addressed to the 'sound discretion of the district court and . . . [is] generally granted only upon the showing of exceptional circumstances.'" *Harvey v. Chemung County*, 2012 WL 1431228, at * 1 (W.D.N.Y. Apr. 24, 2012) (quoting *Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd*, 501 U.S. 115 (1991)).  "' The standard for granting such a motion is strict and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  *Id.* (quoting *Shrader v. CSX Transportation, Inc.*, 70 F.3d 225 (2d Cir. 1995)).

Here, Defendants have failed to identify any factual or legal argument compelling reconsideration of the March 28, 2013 D&O.  Defendants offer utterly no explanation why the proper steps for locating the requested information, *i.e.*, the relevant Form 2082s, which was ultimately produced within a brief amount of time, could not have been taken earlier and, thus, have failed to establish any mistake, inadvertence, surprise, or excusable neglect supporting reconsideration under Rule 60(b)(1).  Rather, despite Defendants' representations that the forms did not exist and thus could not be produced, that Defendants were unable to locate, for more than 22 months, the Form 2082s and death threat information Plaintiff initially demanded in May 2011, yet within two weeks of the March 28, 2013 D&O Defendants had not only managed to determine

21

the proper channel within DOCCS to locate the requested documents, retrieve the documents, and prepare and file the Motion for Reconsideration strongly implies Defendants' attempts to respond to Plaintiff's Discovery Demands were not diligent, but were wilfully negligent or disdainful, and possibly disingenuous, none of which justifies relief under Rule 60(b)(6).  Nor have Defendants pointed to any case establishing that the belated production of the Form 2082s and IG Report, in the face of court-ordered sanctions, provides any basis for the court, in its discretion, to essentially vacate the March 28, 2013 D&O, thereby nullifying the sanctions, and the court's research has revealed none.  As the purpose of discovery sanctions is, *inter alia*, to deter future discovery misconduct, *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) (affirming district court's imposition of discovery sanctions as necessary to uphold the deterrence principle of such sanctions), the court declines to dilute such deterrence by condoning Defendants' unexcused indifference to Plaintiff's unambiguous and valid discovery requests.  *See Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (holding district court did not abuse discretion in continuing to impose discovery sanctions against party who belatedly complied with discovery after sanctions were imposed).  Nor is the disconnect between the relative alacrity with which the requested information was produced after the March 28, 2013 D&O and Defendants' inability to locate the same information during the preceding 22 months explained by Defendants' previous counsel, A.A.G. Murphy.  Moreover, it is not credible that DOCCS personnel were unaware that Form 2082s were archived at the facility were they were filed.  Accordingly, Defendants' Motion for Reconsideration is DENIED.

Defendants are further admonished that because the IG Report they submitted is redacted as to the identity of the confidential informant, and Defendants' continued failure to either disclose the names of the confidential informants who allegedly provided the information giving rise to the claimed suspicion supporting the urinalysis testing of Plaintiff, or an affidavit made by a DOCCS official with personal knowledge that no such informants exists, Defendants remain non-compliant with the March 28, 2013 D&O.  Nor have Defendants explained why they are unable to place in protective custody any confidential informant who may be threatened by the revelation of his identity, and the time in which to do so has long lapsed, or that such alleged informant is not longer incarcerated.  Defendants' continued failure to comply with the March 28, 2013 D&O may subject Defendants to further sanctions.

Insofar as Plaintiff seeks reconsideration of the March 28, 2013 D&O and imposition of harsher sanctions, Plaintiff likewise fails to identify any ground supporting reconsideration under Rule 60.  Furthermore, insofar as Plaintiff maintains he needs additional discovery, including information regarding the disciplinary hearing held in connection with inmate Gilmore's urinalysis testing, the sanction imposed by the March 28, 2013 D&O of an adverse inference, thereby providing for the jury to be instructed that they can draw from Defendants' failure to timely produce the Form 2082s and the identity of the confidential informants that such failure to comply with discovery supports Plaintiff's claim that Defendants had conspired to subject Plaintiff to non-random urinalysis testing without the requisite suspicion, rendering unnecessary Plaintiff's need for the additional discovery.  As such, Plaintiff's Motion for Reconsideration is DENIED.

3.    **Motion to Appoint Counsel and Proceed *In Forma Pauperis***

Although when he commenced this action, Plaintiff paid the associated filing fee, see January 19, 2010 Order (Doc. No. 2) (stating "plaintiff paid the filing fee"), Plaintiff now moves to proceed *in forma pauperis* and for appointment of counsel.  Plaintiff's Affidavit - Motion for Counsel ¶ 2.  In support, Plaintiff explains he has only $ 50 in his inmate account and exhausted his funds to pay the filing fee and process service fees such that he seeks to be excused from paying any fees necessary for discovery, including the expert fees Plaintiff anticipates needing to prove his injuries and that Defendants engaged in the alleged systematic harassment by repeatedly subjecting Plaintiff to urinalysis testing, without any reason to suspect Plaintiff was abusing drugs. *Id.* ¶¶ 3-12.  Plaintiff further maintains his claims have "extraordinary merit," *id.* ¶ 13, but will require extensive expert discovery to prove his injuries and damages and to contest the complex issue presented by Defendants' qualified immunity defense. *Id.* ¶¶ 14-24.

Plaintiff's request to proceed *in forma pauperis* is addressed first.  Pursuant to 28 U.S.C. § 1915, the filing fees associated with the commencement or prosecution of any action for indigent civil litigants may be waived upon the plaintiff's submission of an affidavit stating the plaintiff's assets and demonstrating an inability to pay the costs of litigation.  28 U.S.C. § 1915(a)(1).  Leave to proceed *in forma pauperis* is a privilege, rather than a right, "'provided for the benefit of indigent persons.'"  *Terry v. New York City Dept. Of Corrections*, 2012 WL 718555, at * 2 (S.D.N.Y. Mar. 6, 2012) (quoting *Cuoco v. U.S. Bureau of Prisons*, 328 F.Supp.2d 463, 467 (S.D.N.Y. Aug. 2, 2004)).  Nevertheless, "' the preferable procedure for the District Court to follow is to grant leave to proceed in forma pauperis if the requirements of 28 U.S.C. § 1915(a) are satisfied on

the face of the papers submitted, and dismiss the proceeding under 28 U.S.C. § 1915[e] if the court thereafter discovers that the allegation of poverty is untrue or the action is frivolous or malicious.'" *Stroble v. Oswald*, 56 F.R.D. 68, 74 (W.D.N.Y. 1972) (quoting *Stiltner v. Rhay*, 322 F.2d 314, 317 (9th Cir. 1963) (bracketed material added)).

Here, in his affidavit filed in support of his request for leave to proceed *in forma pauperis*, Plaintiff states that, having paid the filing fee and the U.S. Marshal's service fees, he is no longer in possession of any funds to prosecute this action. Plaintiff's Affidavit - Motion for Counsel ¶ 3. Plaintiff avers he has only $ 50 in his inmate account, which is insufficient to allow Plaintiff to retain counsel or pay for expert witnesses. *Id.* ¶ 5. Plaintiff also provides a brief description of his claims and damages resulting from Defendants' alleged illegal actions. *Id.* ¶¶ 6-23. Although Plaintiff did pay the filing fee and associated fees for service by the U.S Marshals, nothing in the record suggests Plaintiff has repeatedly filed frivolous actions as to be barred under 28 U.S.C. § 1915(e) from seeking *in forma pauperis* status based on abuse of § 1915's privilege. Accordingly, Plaintiff's Motion for Counsel is GRANTED insofar as Plaintiff seeks to proceed *in forma pauperis*.

With regard to Plaintiff's request for appointment of counsel, there is no constitutional rights to appointment of counsel for litigants in civil cases. *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172-74 (2d Cir. 1989). District courts, nevertheless, have "[b]road discretion . . . in deciding whether to appoint counsel." *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). *See also* 28 U.S.C. § 1915(e)(1) (providing district courts may "request an attorney to represent any person unable to afford counsel."). In considering a motion for appointment of counsel, a district court "should

first determine whether the indigent's position [is] likely to be of substance." *Cooper*, 877 F.2d at 172 (internal quotation marks omitted).  Upon satisfying this threshold requirement, the district court considers secondary factors, including the "plaintiff's ability to obtain representation independently, and his ability to handle the case without assistance in . . . light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity." *Id.*  No single factor is controlling in a particular case; rather, "each case must be decided on its own facts." *Hodge*, 802 F.2d at 61.

The court's first inquiry is whether Plaintiff can afford to obtain counsel. *Termite Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (before the court is required to make any other determination on a motion for appointment of counsel, the court "must ascertain whether the litigant is able to afford or otherwise obtain counsel."). The same indigence factors supporting *in forma pauperis* status will also establish indigence for appointment of counsel.  *See Thomas v. Kelly*, 2007 WL 958533, at * 1 (S.D.N.Y. Mar. 28, 2007) ("The indigence requirement is met insofar as the same factors considered in granting [plaintiff] permission to proceed *in forma pauperis* establish [plaintiff's] inability to afford counsel.").   In the instant case, having granted Plaintiff's request for permission to proceed *in forma pauperis*, Discussion, *supra*, at 24-25, Plaintiff is also indigent for purposes of qualifying for appointment of counsel.

With regard to the substance and complexity of the instant action, there is merit to Plaintiff's allegations that Defendants conspired to repeatedly subject Plaintiff to urinalysis testing, based on asserted suspicion, merely to retaliate against Plaintiff for complaining about such testing, especially given the embarrassment and humiliation

from which Plaintiff alleges he suffered each time he was forced to urinate in front of a prison official.  The merits of Plaintiff's allegations are underscored by Defendants' refusal to reveal the identity of the confidential informants who allegedly provided the information giving rise to the suspicion for the urinalysis testing Plaintiff challenges. Under these circumstances, Plaintiff's request for appointment of counsel is GRANTED. A separate order appointing such counsel will be contemporaneously filed.

**4.      Second Motion to Compel**

Plaintiff moves to compel all items the IG Report references as attached, yet which were omitted from the redacted copy of the IG Report Defendants produced to Plaintiff pursuant to the March 28, 2013 D&O.  Plaintiff's Declaration - Second Motion to Compel ¶ 3.  The IG Report pertains to the DOCCS Inspector General's investigation of anonymous death threats made against Plaintiff in November 2008.  *Id.*  According to Plaintiff, he was unaware until Defendants' recent disclosure of the additional items attached to the IG Report, but upon learning of the documents, requested them by letter to A.A.G. Sleight dated April 15, 2013 ("April 15, 2013 Letter"),[10] which request Sleight refused by letter dated April 25, 2013 ("April 25, 2013 Letter").[11]  *Id.* ¶¶ 5-7.  In addition to the documents referenced within the IG Report, Plaintiff requested A.A.G. Sleight provide the identity of the author of the anonymous death threats against Plaintiff as well as copies of any disciplinary reports and sanctions incurred by the death threats'

---

[10] Attached as Exhibit 1 to Plaintiff's Declaration - Second Motion to Compel.

[11] Attached as Exhibit 2 to Plaintiff's Declaration - Second Motion to Compel.

author.  April 15, 2013 Letter at 1.  According to Plaintiff, although discovery had

closed, because Plaintiff was unaware of the existence of the newly requested

information until he received the redacted copy of the IG Report, Plaintiff's request for

such discovery should be honored.  *Id.*  Sleight responded that he regarded "with irony"

Plaintiff's belated request for such discovery given Plaintiff's "vehement opposition" to

Defendants' request to amend the Scheduling Order.  April 25, 2013 Letter at 1.  Sleight

further stated Defendants were opposed to producing the newly requested information

because disclosing the identity of "confidential informants poses a serious risk to the

safety and well being of those individuals."  *Id.*

It is basic that the IG Report was comprised not only of the single page entitled

"Investigative Report," but also those documents incorporated by reference, including

"Items" 2, 3, 22, 23, 24, 25, and 26.  *See*, *e.g.*, *In re Bank of America Corp. Securities,*

*Derivative and Employment Retirement Income Security Act (ERISA) Litigation*, 258

F.R.D. 260, 266 (S.D.N.Y. 2009) (considering, in connection with investors' derivative

action alleging financial entity's true financial condition was not fully disclosed, proxy

statement announcing terms of merger to consist of proxy statement as well as all

documents incorporated by reference).  As such, the March 28, 2013 D&O's direction

that Defendants were to produce the IG Report necessarily included Items 2, 3, 22, 23,

24, 25, and 26, and Defendants are not in compliance with the March 28, 2013 D&O

until those items are produced to Plaintiff.  Any concern that revealing the name of the

inmate who authored the anonymous death threat against Plaintiff can be addressed by

placing such inmate in protective custody, if necessary.  Plaintiff's Second Motion to

Compel Discovery is GRANTED as to the request for the identity of the anonymous

death threat author, and Items 2, 3, 22, 23, 24, 25, and 26 incorporated by reference into the IG Report.

As to Plaintiff's further requests for copies of any disciplinary records and sanctions incurred by the anonymous death threat author, Plaintiff has not established how such information would be relevant to the instant action.  Accordingly, such request is DENIED.


## CONCLUSION

Based on the foregoing, Defendants' Motion to Amend (Doc. No. 55) is DENIED; Defendants' Motion for Reconsideration (Doc. No. 62) is DENIED; Plaintiff's Request for Reconsideration (Doc. No. 66) is DENIED; Plaintiff's Motion to Proceed *In Forma Pauperis* and for Appointment of Counsel (Doc. No. 67) is GRANTED; Plaintiff's Second Motion to Compel (Doc. No. 72) is GRANTED in part and DENIED in part. SO ORDERED.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 20, 2013
            Buffalo, New York


**Any appeal of this Decision and Order must be taken to by filing a notice of**

**appeal with the Clerk of the Court within 14 days of the filing of this**

**Decision and Order pursuant to Fed. R. Civ. P. 72(a).**